PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

   *Plaintiff-Appellee,*

v.

DARRYL HARCUM,

   *Defendant-Appellant.*

No. 07-4890

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(1:06-cr-00434-AMD)

Argued: September 25, 2009

Decided: November 17, 2009

Before NIEMEYER, MICHAEL, and KING, Circuit Judges.

---

Vacated and remanded by published opinion. Judge King wrote the opinion, in which Judge Niemeyer and Judge Michael joined.

---

## COUNSEL

**ARGUED**: Sapna Mirchandani, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. Cheryl L. Crumpton, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

**ON BRIEF:** James Wyda, Federal Public Defender, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

**OPINION**

KING, Circuit Judge:

Darryl Harcum pursues this appeal from the 235-month prison sentence imposed in the District of Maryland on his conviction for being a felon in possession of a firearm, in contravention of 18 U.S.C. § 922(g)(1). Harcum's sole appellate contention is that the district court erred in enhancing his sentence under the Armed Career Criminal Act (the "ACCA"), which mandates a minimum fifteen-year sentence when a person convicted under § 922(g) "has three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e). More specifically, Harcum contends that the court erred in relying on documents filed in one Maryland state court to establish that his assault conviction in a separate Maryland state court qualifies as a "violent felony" conviction under the ACCA. As explained below, we vacate and remand.

I.

On September 29, 2006, Harcum was indicted in the District of Maryland for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Harcum pleaded not guilty and, on May 16, 2007, was convicted after a jury trial. A month later, on June 21, 2007, the probation officer filed a presentence report (the "PSR") in the district court that recommended classifying Harcum as an armed career criminal under the ACCA. In support thereof, the PSR characterized four previous convictions as being for ACCA predicate offenses — three "serious drug offenses" plus a single "violent felony." In opposition, Harcum asserted that three of his

four previous convictions were not for predicate offenses under the ACCA. Notably, the Government conceded that his contention was meritorious as to one of the three drug convictions. On appeal, Harcum focuses solely on the single "violent felony" conviction specified in the PSR — a 2003 conviction in Maryland for second-degree assault. In that regard, Harcum maintains that his assault offense does not qualify as an ACCA violent felony.

### A.

The following facts pertain to Harcum's second-degree assault conviction in Maryland. On August 2, 2002, a statement of charges (the "Statement of Charges") was filed against Harcum in the District Court of Maryland (the "District Court"), at Baltimore City, charging one count of first-degree assault and a separate count of second-degree assault.[1] The Statement of Charges stated that, "upon the facts contained in the application of [the complaining witness,] it is formally charged that Harcum . . . did assault [the victim]." J.A. 439.[2] The "application" referenced in the Statement of Charges was prepared by a Baltimore police detective, who asserted that Harcum had punched his victim in the face, causing the victim to fall backward through a glass window and suffer minor injuries. Harcum was neither tried nor convicted on the charges levied in the Statement of Charges. Instead, on September 17, 2002, Harcum was charged with first- and second-degree assault in a two-count criminal information (the "Information") filed in the Circuit Court for Balti-

---

[1] The District Court is a court of limited jurisdiction, sitting in twelve districts throughout Maryland. *See* Md. Code Ann., Cts. & Jud. Proc. §§ 1-601, 1-602. Unlike cases pursued in Maryland's circuit courts, jury trials are not conducted in the District Court. *See id.* §§ 1-502, 4-302, 4-402. Thus, despite possessing jurisdiction over both misdemeanor and felony offenses, the District Court's jurisdiction in felony proceedings is substantially circumscribed. *See id.* § 4-302.

[2] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

more City (the "Circuit Court").[3] Although the Statement of Charges and the Information each alleged assault offenses committed on the same day, in the same location, and against the same victim, the Information — unlike the Statement of Charges — alleged no additional facts. On February 13, 2003, Harcum pleaded guilty in the Circuit Court to the misdemeanor offense of second-degree assault, as charged in the Information. The first-degree assault charge in the Information was then dismissed, and Harcum was sentenced by the Circuit Court to eighteen months in prison.

B.

On August 24, 2007, three months after his § 922(g)(1) conviction by the federal jury, Harcum appeared for sentencing in the district court. In the sentencing proceedings, Harcum contended that the Government had failed to prove that his second-degree assault conviction in Maryland was a "violent felony" conviction for purposes of the ACCA. More specifically, Harcum maintained that the sentencing court was not entitled to rely on the Statement of Charges — an external document from a different court (the District Court) than the court of conviction (the Circuit Court) — in assessing whether his assault offense qualified as an ACCA violent felony.

At Harcum's federal sentencing hearing, the Government maintained that the PSR had correctly characterized his second-degree assault offense as an ACCA predicate offense. According to the United States Attorney, the Statement of Charges demonstrated that Harcum's assault conviction was

---

[3]The Circuit Court for Baltimore City is one of Maryland's twenty-four circuit courts, one in each county and Baltimore City. *See* Md. Code Ann., Cts. & Jud. Proc. § 1-503. Unlike the District Court, the circuit courts are courts of general jurisdiction, which conduct jury trials and handle major civil and criminal cases. *See id.* §§ 1-501, 1-502, 4-302, 4-402. The circuit courts also hear appeals from the District Court. *See id.* §§ 12-401(c), 12-403.

for a "violent felony," and it was appropriate for the sentencing court to consider the Statement of Charges because it was sufficiently linked to Harcum's Circuit Court conviction.[4] As evidence of that linkage, the Government contended that the Statement of Charges and the Information included the same "tracking number," and that the Information reflected the District Court's case number.[5]

The sentencing court overruled Harcum's objection and relied on the Statement of Charges in concluding that Harcum's second-degree assault conviction constituted a "violent felony" conviction under the ACCA. Deeming Harcum an armed career criminal, the court was required by § 924(e) to impose a minimum prison sentence of fifteen years. Harcum was then sentenced to 235 months' imprisonment, 115 months more than the statutory maximum of ten years that was otherwise applicable to his offense of conviction. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2).

Harcum has filed a timely notice of appeal, and we possess jurisdiction pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## II.

We review de novo whether a defendant's previous conviction was for a predicate offense under the ACCA. *See United States v. Williams*, 326 F.3d 535, 537 (4th Cir. 2003). The

---

[4]Although Harcum's assault offense was a misdemeanor under Maryland law, it carried a potential term of imprisonment of up to ten years. *See* Md. Code Ann., Crim. Law § 3-203 (former Md. Code Ann. art. 27, § 12A). As a result, the assault offense could constitute a "violent felony" under the ACCA. *See* 18 U.S.C. § 921(a)(20) (providing that state misdemeanor offense punishable by more than two years' imprisonment may qualify as ACCA violent felony); *Logan v. United States*, 128 S. Ct. 475, 479 (2007).

[5] The meaning of the term "tracking number," in the context of a Maryland criminal proceeding, is not apparent on this record.

Government bears the burden of proving an ACCA predicate offense by a preponderance of the evidence. *See, e.g.*, *United States v. Boaz*, 558 F.3d 800, 806 (8th Cir. 2009); *United States v. Diaz*, 519 F.3d 56, 67 (1st Cir.), *cert. denied*, 129 S. Ct. 132 (2008).

## III.

Harcum's sole appellate contention is that the sentencing court erred when it looked to and relied on the Statement of Charges in determining that his Maryland second-degree assault conviction qualified as a "violent felony" conviction under the ACCA. In pursuing this contention, Harcum relies on the Supreme Court's decisions in *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005), and their progeny. We begin our assessment of Harcum's contention with a discussion of the pertinent legal principles.

## A.

The ACCA mandates a minimum fifteen-year prison sentence for a person who is convicted of unlawful possession of a firearm, and who "has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). A "violent felony" is defined by the ACCA as "any crime punishable by imprisonment for a term exceeding one year [that] has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* § 924(e)(2)(B)(i). A state misdemeanor offense "punishable by a term of imprisonment of two years or less," however, is not an ACCA violent felony. *Id.* § 921(a)(20). In assessing whether an offense constitutes an ACCA predicate offense, two types of analyses are potentially applicable — known as the "categorical" approach and the "modified categorical" approach.

In assessing whether an offense constitutes an ACCA pred-
icate offense, we must first utilize the categorical approach.
As we have recently explained, we are obliged, under that
approach, to analyze the offense "generically — that is, by
relying solely on its essential elements, rather than on the par-
ticular underlying facts." *United States v. White*, 571 F.3d
365, 368 (4th Cir. 2009) (citing *James v. United States*, 550
U.S. 192, 208 (2007)). Pursuant to the categorical approach,
a federal sentencing court may look only to the fact of convic-
tion and the statutory definition of the offense of conviction
to determine whether the offense is a "serious drug offense"
or a "violent felony" under the ACCA. *See Shepard*, 544 U.S.
at 17; *Taylor*, 495 U.S. at 600-02. As we have also observed,
if we were required to examine the facts underlying each
predicate offense, "sentencing would become a series of
minitrials for each prior offense, which would be both costly
and unreliable." *United States v. Pierce*, 278 F.3d 282, 286
(4th Cir. 2002); *see Taylor*, 495 U.S. at 601 ("If Congress had
meant to adopt an approach that would require the sentencing
court to engage in an elaborate factfinding process regarding
the defendant's prior offenses, surely this would have been
mentioned somewhere in the legislative history.").

Although the Supreme Court has expressed its preference
for the categorical approach, that approach does not always
reveal the nature of the asserted predicate offense encountered
by a sentencing court. Thus, pursuant to the Court's decisions
in *Shepard* and *Taylor*, when the fact of conviction and the
statutory definition of the offense are unduly vague or ambig-
uous, a sentencing court is entitled to turn to and apply the
alternative "modified categorical" approach. *See Shepard*, 544
at 20, 26; *Taylor*, 495 U.S. at 602. In its 1990 *Taylor* decision,
for example, the Supreme Court was unable, under the cate-
gorical approach, to determine whether Taylor's burglary
offense qualified as a "violent felony" under the ACCA,
because the record did not reflect which specific state bur-
glary statute was applicable, and not all of the state's burglary
statutes involved criminal conduct that would qualify as an

ACCA violent felony. *See* 495 U.S. at 578 n.1, 602. Thus, the Court recognized that a sentencing court is entitled, in the proper circumstances, to go beyond the scope of the categorical approach and assess the underlying charging documents or jury instructions to ascertain whether the offense qualifies as an ACCA predicate offense. *See id.* at 602 (utilizing modified categorical approach for cases involving jury convictions); *see also Shepard*, 544 U.S. 13 (expanding modified categorical approach to situations involving plea agreements).

A sentencing court's ability to utilize the modified categorical approach — and thus extend its analysis to factors beyond the fact of conviction and the statutory definition of the offense — is substantially circumscribed. Indeed, the Supreme Court has barred a sentencing court from considering unreliable evidence, which includes materials that are outside the record of the court of conviction. *See Shepard*, 544 U.S. at 20-23 (barring sentencing court from considering police report and complaint application, which extended "beyond conclusive records made or used in adjudicating guilt"). More specifically, in assessing whether the offense of conviction is a predicate offense under the ACCA, a sentencing court may, under the modified categorical approach, appropriately consider only "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 16.

Subsequent to the Court's *Shepard* decision in 2005, we approved a sentencing court's utilization, under the modified categorical approach, of certain "external documents" — beyond the scope of otherwise permissible items — because they were "explicitly incorporated" into permissible documents. *See United States v. Simms*, 441 F.3d 313, 317 (4th Cir. 2006). In *Simms*, the defendant sought to analogize his situation to the *Shepard* criteria, asserting that the sentencing court erred in considering an *application* for a statement of charges in deciding that his Maryland battery conviction qual-

ified as an ACCA predicate offense. *See id.* We rejected Simms's analogy, however, explaining that it "fail[ed] to account for the fact that the Maryland application, although originally 'submitted to [the] lower court[ ] . . . prior to charges,' was later explicitly incorporated into Maryland's statement of charges against Simms." *Id.* (internal citation omitted). Thus, because the application had been "explicitly incorporated" into the statement of charges, both documents were appropriately considered by the sentencing court, as they were essentially one and the same. *See id.*; *cf. Parrilla v. Gonzales*, 414 F.3d 1038, 1044 (9th Cir. 2005) (authorizing sentencing court to consider specifically incorporated external documents).

B.

In this matter, Harcum was convicted in 2003 of second-degree assault, which is a broadly defined offense under Maryland law. *See* Md. Code Ann., Crim. Law §§ 3-201, 3-203.[6] Notably, we have already recognized that a Maryland "common-law assault is not per se a 'violent felony' within the meaning of § 924(e)(2)(B)(i)." *United States v. Coleman*, 158 F.3d 199, 204 (4th Cir. 1998); *see also United States v. Kirksey*, 138 F.3d 120, 125 (4th Cir. 1998) (describing assault in Maryland to include, inter alia, "*any* unlawful force used against a person of another, *no matter how slight*" (internal quotation marks omitted)). Thus, the question of whether Harcum's assault conviction was for an ACCA violent felony cannot be determined solely from the statutory definition of the offense and the mere fact of his conviction. To resolve this

---

[6]Pursuant to Maryland law, "[a]ssault means the crimes of assault, battery, and assault and battery, which retain their judicially retained meanings." Md. Code Ann., Crim. Law § 3-201. The statutory prohibition for second-degree assault simply provides that "[a] person may not commit an assault." *Id.* § 3-203. When the Information was filed, sections 3-201 and 3-203 were codified at Maryland Annotated Code article 27, sections 12(b) and 12A, respectively.

appeal, therefore, we must utilize the modified categorical approach explained in *Shepard* and *Simms*.

Pursuant to the modified categorical approach, the Information filed against Harcum in the Circuit Court was the only appropriate document for consideration by the federal sentencing court, as it did not have access to any other *Shepard*-approved documents, such as a plea agreement or a plea transcript. Standing alone, however, the Information lacks sufficient factual allegations to support classifying Harcum's second-degree assault offense as an ACCA violent felony. Thus, the disposition of this appeal turns on whether the Statement of Charges was explicitly incorporated into the Information, thereby rendering the Statement of Charges appropriate for consideration by the sentencing court. *See Simms*, 441 F.3d at 317. Harcum contends on appeal that the Statement of Charges, on the one hand, and the Information, on the other, are separate and distinct charging documents, and that the Information failed to explicitly incorporate the Statement of Charges. Accordingly, Harcum maintains that the sentencing court was limited to an assessment of the Information only, which fails to establish, by a preponderance of the evidence, that his Maryland assault offense qualifies as an ACCA violent felony.

Harcum is correct in characterizing the Statement of Charges and the Information as distinct charging documents under Maryland law. *See* Md. R. 4-102(e), (j) (explaining that an information is "a charging document filed in a court by a State's Attorney," and that a statement of charges is "a charging document, other than a citation, filed in District Court by a peace officer or by a judicial officer"). *See generally* Md. R. 4-201 (explaining different uses of charging documents). Indeed, Maryland's highest state court, the Court of Appeals, has distinguished between such charging documents, recognizing that "[t]he State's Attorney may supplant the statement of charges by filing an information. . . . [A]n information . . . may charge the defendant with offenses different from those

in the statement of charges." *State v. Smith*, 505 A.2d 511, 524 (Md. 1986). Thus, the charging document for the assault conviction at issue here — the Information — initiated a separate criminal proceeding against Harcum in a different court.

On the face of the Information, however, *no* explicit reference to the Statement of Charges is made, a dramatic departure from the circumstances underlying our *Simms* decision. As we there recognized, a Maryland statement of charges generally adopts the application underlying such charges by explicitly incorporating the application. *See Simms*, 441 F.3d at 313. This principle does not apply to an information, however, that references neither the statement of charges nor any charging application. *See* Md. Code Ann., Crim. Law § 3-206(a). Thus, we are unable to conclude that the Information incorporated the Statement of Charges.[7]

Furthermore, the mere reference to tracking and case numbers fails to explicitly incorporate the Statement of Charges into the Information. Such numbers are found on several types of court and investigative documents, including those that have been deemed unreliable for ACCA purposes by other courts. *See, e.g.*, *Shepard*, 544 U.S. at 16 (recognizing police report as insufficient proof of ACCA predicate offenses); *United States v. Price*, 409 F.3d 436, 445 (D.C. Cir. 2005)

---

[7]The Government has emphasized that, because "the charges filed in each court were based on the same offense committed on the same day against the same victim in the same location, the sentencing judge had more than a sufficient basis to rely on the District Court charging documents." Br. of Appellee 13-14. Mere similarities in such documents, however, fail to explicitly incorporate their contents, and they do not authorize a sentencing court to bypass the "court of conviction" requirement of *Shepard*, 544 U.S. at 13, 20, 23 (concluding that evidence of ACCA predicate offense should "be confined to records of the convicting court approaching the certainty of the record of conviction"), and *Taylor*, 495 U.S. at 575.

(deeming docket listing to "lack the necessary indicia of reliability").[8]

In these circumstances, we are constrained to agree with Harcum that the Government failed to prove that the Information incorporated the Statement of Charges. Thus, the court erred in relying on the Statement of Charges and sentencing Harcum under the ACCA.

IV.

Pursuant to the foregoing, we vacate Harcum's sentence and remand for such resentencing proceedings as may be appropriate.

*VACATED AND REMANDED*

---

[8]We have never directly addressed whether administrative documents are sufficiently reliable to be utilized for ACCA purposes. Other courts of appeals have recognized, however, that docket sheets and abstracts of judgments are not sufficiently reliable under *Taylor* and *Shepard*. *See, e.g.*, *Price*, 409 F.3d at 445 (addressing unreliability of docket sheet); *United States v. Gutierrez-Ramirez*, 405 F.3d 352, 357-58 (5th Cir. 2005) (addressing unreliability of abstract of judgment); *United States v. Navidad-Marcos*, 367 F.3d 903, 908-09 (9th Cir. 2004) (same). Our disposition of this appeal does not require that we directly address this issue, as tracking and case numbers alone are insufficient to incorporate one such document into another.