KING, Circuit Judge,
concurring:
Although the en banc majority utilizes the modified categorical approach to analyze whether a prior conviction for violating North Carolina General Statute section 14-202.1 (the “Indecent Liberties Statute” or “Statute”) qualifies as an ACCA “violent felony,” I am convinced that we are required by precedent to evaluate Vann’s convictions under the Statute by sole resort to the categorical approach. Either approach produces the same result in Vann’s case, but tomorrow is another day.[1] I fear that our Court’s stamp of approval on future ACCA enhancements predicated on the inappropriate invocation of the modified categorical approach will contravene Supreme Court precedent and the interests of justice.
I.
Whether an offense constitutes a “violent felony” under the ACCA is a question of law that we review de novo. See United States v. White, 571 F.3d 365, 367 (4th Cir.2009). Nevertheless, as a federal court evaluating a state offense, we are “bound by the [state supreme court’s] interpretation of state law, including its determination of the elements of’ the offense. Johnson v. United States, - U.S. -, 130 S.Ct. 1265, 1269, 176 L.Ed.2d 1 (2010). Where the state’s highest court has not decided an issue of state law, the federal courts defer to state intermediate appellate court decisions, unless we are convinced that the state supreme court would rule to the contrary. See Assicurazioni Generali, S.p.A. v. Neil, 160 F.3d 997, 1002 (4th Cir.1998) (citing West v. AT & T Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940)). Deference to the intermediate appellate court makes especially good sense in jurisdictions like North Carolina, where the decisions of the Court of Appeals of North Carolina are binding on all state courts save its highest, and panel opinions bind subsequent panels. See State v. Jones, 358 N.C. 473, 598 S.E.2d 125, 133 (2004) (“Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court.” (internal quotation marks omitted)).
II.
The ACCA’s provision for an enhanced sentence — a statutory range of fifteen years to life — is applicable when a defendant has “three previous convictions ... for a violent felony or a serious drug offense.” 18 U.S.C. § 924(e)(1). The ACCA defines a “violent felony” as an offense punishable by imprisonment for a term exceeding one year that
(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
*778 § 924(e)(2)(B). The issue in this appeal is whether Vann’s previous convictions for violating the Indecent Liberties Statute constitute violent felony convictions under the “residual clause” of § 924(e)(2)(B)(ii)— that is, whether his indecent liberties offenses “otherwise involve[d] conduct that presents a serious potential risk of physical injury to another.”
A.
1.
In assessing whether a previous offense properly constitutes an ACCA violent felony, the federal courts typically employ the “categorical approach,” under which we consider the fact of conviction and the elements of the offense, but not the particular underlying acts. See James v. United States, 550 U.S. 192, 202, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007); Taylor v. United States, 495 U.S. 575, 599-602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). If “the elements of the offense are of the type that would justify its inclusion within the residual provision, without inquiry into the specific conduct of [the] particular offender,” the previous offense is a violent felony for sentencing purposes. James, 550 U.S. at 202, 127 S.Ct. 1586 (emphasis omitted).
In limited circumstances, however, the courts may take account of more than the fact of conviction and the bare elements of the previous offense, resorting to the “modified' categorical approach.” See United States v. Harcum, 587 F.3d 219, 223 (4th Cir.2009). Use of the modified categorical approach is only appropriate when the statute of conviction encompasses multiple distinct categories of behavior, and at least one of those categories constitutes an ACCA violent felony. See Johnson v. United States, — U.S. -, 130 S.Ct. 1265, 1273, 176 L.Ed.2d 1 (2010). The modified categorical approach permits a sentencing court, in conducting its ACCA analysis, to determine which category of behavior underlies the conviction. See id.
To illustrate, a statute might criminalize both the burglary of a building and the burglary of a motor vehicle. See, e.g., Mass. Gen. Laws, ch. 266, § 16. Inasmuch as the burglary of a vehicle is not a violent felony under the ACCA, the categorical approach would preclude a sentencing court from counting any conviction under that statute toward an ACCA enhanced sentence. See Shepard v. United States, 544 U.S. 13, 16-17, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005). The modified categorical approach, however, authorizes the court to divide the prohibited conduct into two categories: burglary of a building (an ACCA violent felony) and burglary of a vehicle (not an ACCA violent felony). See id.
In applying the modified categorical approach, a sentencing court is entitled to consult certain court records, such as charging documents, plea agreements, transcripts of plea colloquies, judicial findings of fact and conclusions of law, jury instructions, and verdict forms. See Shepard, 544 U.S. at 26, 125 S.Ct. 1254. These “Shepard-approved documents” may identify which category of behavior underlies a defendant’s previous conviction, enabling the sentencing court to determine whether that offense constitutes an ACCA violent felony — e.g., burglary of a building. See id.
The modified categorical approach thus serves to augment the record on which a sentencing court may rely, allowing the court to “choose the right category” of offending behavior with respect to a previous conviction under a broad statute. Chambers v. United States, 555 U.S. 122, 129 S.Ct. 687, 690, 172 L.Ed.2d 484 (2009). Like the categorical approach, however, the modified categorical approach does not authorize a sentencing court to use Shep *779 ard-approved documents to consider the particular acts underlying the previous conviction. See id. Thus, regardless of which analytical approach applies, a conclusion that a previous offense constitutes an ACCA violent felony must derive solely from the category of behavior regulated. See id.

2.

Notably, Vann’s previous indecent liberties offenses do not have any element of force, are neither burglary, arson, nor extortion, and did not involve explosives. Those offenses, therefore, can only constitute ACCA violent felonies if they fall within the ambit of the residual clause.[2] The task of properly analyzing that question is more difficult than it might first appear; ascertaining the breadth of the residual clause has been a challenging endeavor for the federal courts.
In Begay v. United States, 553 U.S. 137, 142, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), the Supreme Court explained that not every felony offense involving a risk of injury to a third party must be considered a violent felony under the ACCA. To fall within the residual clause, the previous offense must be “roughly similar, in kind as well as in degree of risk posed,” to the ACCA-enumerated crimes of burglary, arson, extortion, and offenses involving explosives. Id. at 143, 128 S.Ct. 1581. The Court elaborated that the enumerated offenses “typically involve purposeful, violent, and aggressive conduct,” and such conduct makes it “more likely that an offender, later possessing a gun, will use that gun deliberately to harm a victim.” Id. at 145, 128 S.Ct. 1581 (internal quotation marks omitted). In order to qualify as an ACCA violent felony, the previous offense must be one that is “characteristic of the armed career criminal,” tending to “show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger.” Id. at 145-46, 128 S.Ct. 1581 (internal quotation marks omitted). Applying those principles, the Begay Court ruled that a felony DUI under New Mexico law, which the Court considered to be similar to a strict liability crime, is not “associated with a likelihood of future violent, aggressive, and purposeful ‘armed career criminal’ behavior.” Id. at 148, 128 S.Ct. 1581. The New Mexico felony DUI was thus determined by the Court to be outside the scope of the residual clause. See id.
After the Begay decision, our Court had occasion to evaluate whether a violation of Virginia’s statutory rape law — which makes it a criminal offense for a person to “ ‘carnally know[ ], without the use of force, a child’” between the ages of thirteen and fifteen — constitutes a violent felony under the residual clause. United States v. Thornton, 554 F.3d 443, 444 (4th Cir.2009) (alteration in original) (quoting Va.Code Ann. § 18.2-63). In Thornton, the government maintained that all viola *780 tions of the Virginia statute were, similar to the enumerated offenses of § 924(e)(2)(B)(ii), necessarily purposeful, creating a serious risk of confrontation and bodily injury (including pregnancy and sexually transmitted diseases). See id. at 447.
We rejected the government’s position in Thornton, however, reasoning that Virginia’s definition of carnal knowledge did “not support an inference that any or all instances of the offense are violent and aggressive.” See 554 F.3d at 449. In so ruling, we recognized that nonforcible adult-minor sexual activity does not create risks that are “roughly similar, in kind as well as in degree of risk posed, to the examples of burglary, arson, extortion, and crimes involving explosives.” Id. at 446 (internal quotation marks omitted). Notably, we explained that “[t]he enumerated crimes create immediate, serious, and foreseeable physical risks that arise concurrently with the commission of the crimes themselves.” Id. at 449. On the other hand, the risks associated with statutory rape “are not immediate or violent in nature and do not inherently support an inference that an offender will later commit a violent crime.” Id. Although we did not “minimize the risks associated with adult-minor sexual activity,” we concluded in Thornton that “a conviction under Virginia’s carnal knowledge offense is not ‘associated with a likelihood of future violent, aggressive, and purposeful “armed career criminal” behavior’ and cannot constitute a violent felony under the ACCA.” Id. (quoting Begay, 553 U.S. at 148, 128 S.Ct. 1581).
Earlier this year, in Sykes v. United States, the Supreme Court revisited the breadth of the residual clause, concluding that the Indiana offense of knowingly fleeing from a law enforcement officer in a motor vehicle constitutes an ACCA violent felony. See — U.S. -, 131 S.Ct. 2267, 180 L.Ed.2d 60 (2011).[3] The Court recognized that, based on the elements of that offense, fleeing from the police in a vehicle is a deliberate act that presents risks of third-party physical injury similar to the enumerated crimes of arson and burglary. See id. at 2273-74. More particularly, both arson and vehicular flight involve an “intentional release of a destructive force dangerous to others.” Id. at 2273. Likewise, the risks posed by vehicular flight are similar to those presented by a burglary, in that both offenses “can end in confrontation leading to violence.” Id.
The Supreme Court thus rejected Sykes’s contention that his vehicular flight offense did not entail the type of conduct necessary to bring it within the ACCA’s residual clause. See Sykes, 131 S.Ct. at 2275. As the Court explained, the analysis should focus on the level of risk associated with the previous offense of conviction, notwithstanding the “purposeful, violent, and aggressive” conduct stressed by the Begay Court in the context of a strict liability offense. See Sykes, 131 S.Ct. at 2275. Significantly, the Sykes decision reiterated that the ACCA
limits the residual clause to crimes “typically committed by those whom one normally labels ‘armed career criminals,’ ” that is, crimes that “show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger.”
Id. (quoting Begay, 553 U.S. at 146, 128 S.Ct. 1581). Thus, although Sykes may be said to distance the Court from its earlier emphasis on purposeful, violent, and ag *781 gressive conduct, the essential hallmarks of Begay were reaffirmed.
B.
Vann maintains that we are obliged to employ the categorical approach in our analysis, the inevitable consequence of which is that his previous indecent liberties offenses cannot be considered ACCA violent felonies. The government entreats to the contrary, insisting that we should invoke the modified categorical approach, which, it posits, establishes that Vann’s previous convictions are for ACCA violent felonies. The government alternatively asserts that, regardless of the approach used, we are bound to affirm the sentence imposed by the district court.
1.
Importantly, a violation of the Statute does not require physical contact. See, e.g., State v. Hammett, 182 N.C.App. 316, 642 S.E.2d 454, 459 (2007). Additionally, the physical proximity of the offender to the victim is not determinative; convictions have been obtained in situations where the offender has been merely constructively present, i.e., by making inappropriate telephone calls or secretly videotaping a minor during a change of clothing. See State v. Every, 157 N.C.App. 200, 578 S.E.2d 642 (2003) (telephone conversations); State v. McClees, 108 N.C.App. 648, 424 S.E.2d 687 (1993) (clandestine videotaping).
Because a violation of the Indecent Liberties Statute does not require either touching or physical proximity, and does not necessarily implicate any awareness on the part of the minor victim, the risks associated with its proscribed conduct are fundamentally different than those associated with the offenses enumerated in 18 U.S.C. § 924(e)(2)(B)(ii). A violation of the Statute does not categorically involve a release of a destructive force capable of causing physical injury to another, as would an arson or offense involving explosives. Nor does a violation of the Statute necessarily show a disregard for the safety of others, as does vehicular flight from the police. See Sykes, 131 S.Ct. at 2273-74. Similarly, the risks posed by a violation of the Statute are unlike those posed by a burglary, as there exists no categorical likelihood that a violation would “end in [a] confrontation leading to violence.” Id. at 2273.[4]
Moreover, although an accused must knowingly commit the acts underlying an indecent liberties conviction in North Carolina, a good faith “mistake of age is not a defense to the offense of taking indecent liberties with a minor.” Cinema I Video, Inc. v. Thornburg, 83 N.C.App. 544, 351 S.E.2d 305, 320 (1986). A violation of the Indecent Liberties Statute therefore resonates in strict liability, reminiscent of the Begay DUI offense, which is not an ACCA violent felony. See 553 U.S. at 148, 128 S.Ct. 1581.
Unlike the offenses of vehicular flight and those enumerated in § 924(e) (2) (B) (ii) — each of which “create immediate, serious, and foreseeable physical risks that arise concurrently with the commission of the crimes themselves,” Thornton, 554 F.3d at 446 — a violation of *782 the Indecent Liberties Statute is not the type of offense ‘“typically committed by those whom one normally labels armed career criminals,’ ” Sykes, 131 S.Ct. at 2275 (quoting Begay, 553 U.S. at 146, 128 S.Ct. 1581 (internal quotation marks omitted)). At bottom, a violation of the Statute, although a serious offense, is unlikely to “ ‘show an increased likelihood that the offender is the kind of person who might deliberately point [a] gun and pull the trigger.’ ” Id. (quoting Begay, 553 U.S. at 146, 128 S.Ct. 1581). As a result, such a violation is categorically not a -violent felony under the ACCA.
2.
Having concluded that Vann’s indecent liberties convictions are categorically not violent felonies within the meaning of the ACCA, I would reject the government’s invitation to reach a different result through application of the modified categorical approach. The categorical approach, when it applies — as it does here— is mandatory and dispositive. See United States v. Rivers, 595 F.3d 558, 564 (4th Cir.2010) (instructing that, where “the statute only contains one category of crime ... a court may not vary from the categorical approach”). Importantly, there is no precedent for the proposition that the categorical approach is a tool of convenience that can be discarded when the other methodology might advance the government’s interest.
On the face of the Indecent Liberties Statute, it may appear that its subsection (a)(1) (taking any indecent liberty with a child for the purpose of arousing or gratifying sexual desire) and its subsection (a)(2) (committing any lewd or lascivious act upon or with the body of a child) could regulate sufficiently distinct behaviors to justify our use of the modified categorical approach. If we were writing on a blank slate, I might conclude that a violation of subsection (a)(1) is a less serious offense that does not require physical contact with the minor victim, while a violation of subsection (a)(2) is a more serious offense that requires some form of physical contact — a lewd or lascivious act upon the body of a child.
The North Carolina courts, however, have declined to so interpret the Statute. And time-tested principles of federalism bar us from construing it otherwise. See Johnson v. Fankell, 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997) (explaining that no “federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State”). As Justice Stevens explained for the unanimous Court in Johnson, the foregoing “proposition is fundamental to our system of federalism.” Id.
The courts of North Carolina have ruled time and again that, in enacting the Statute, the state legislature chose not to “distinguish between the types of indecent liberties,” State v. Jones, 99 N.C.App. 412, 393 S.E.2d 585, 589 (1990), and instead made “[t]he crime of indecent liberties ... a single offense,” State v. Hartness, 326 N.C. 561, 391 S.E.2d 177, 180 (1990); see also State v. Jones, 172 N.C.App. 308, 616 S.E.2d 15, 20 (2005) (rejecting proposition that “[sjubsections (a)(1) and (a)(2) are separate criminal offenses with different elements” (emphasis omitted)). In order to prove an offense under the Statute, the State must establish five elements:
(1) the defendant was at least 16 years of age; (2) he was five years older than his victim; (3) he willfully took or attempted to take an indecent liberty with the victim; (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred; and (5) the action by the defendant was for the pur *783 pose of arousing or gratifying sexual desire.
State v. Coleman, 200 N.C.App. 696, 684 S.E.2d 513, 519 (2009) (internal quotation marks omitted). In prosecutions under subsection (a)(2) involving a lewd or lascivious act, “[h]owever, it may be logically assumed that acts described as ‘lewd’ and ‘lascivious’ are committed ‘for the purpose of arousing or gratifying sexual desire.’ ” State v. Wilson, 87 N.C.App. 399, 361 S.E.2d 105, 108 (1987). Nonetheless, neither subsection of the Statute requires as proof of an essential element any kind of touching — sexual or otherwise. See Hammett, 642 S.E.2d at 459 (rejecting contention “that, in order to be convicted under [subsection (a)(2) ], the accused must actually touch the victim”); Every, 578 S.E.2d at 648 (recognizing that subsection (a)(1) does not require touching).
Although theoretically distinguishable, the Indecent Liberties Statute’s two subsections have been treated interchangeably by the North Carolina courts, and those courts have consistently recognized that the same behavior can be prosecuted under either subsection. See, e.g., State v. Banks, 322 N.C. 753, 370 S.E.2d 398, 407 (1988) (prosecuting “acts of kissing” under subsection (a)(1) and subsection (a)(2)). Indeed, persons engaging in the same objectionable behavior, not involving physical contact, are sometimes prosecuted under subsection (a)(1), but otherwise under subsection (a)(2). See Hammett, 642 S.E.2d at 459 (prosecuting masturbation in another’s presence under subsection (a)(2)); State v. Turman, 52 N.C.App. 376, 278 S.E.2d 574, 575 (1981) (same; subsection (a)(1)); State v. McClees, 108 N.C.App. 648, 424 S.E.2d 687 (1993) (prosecuting videotaping of disrobing teenager under subsection (a)(1)); State v. Kistle, 59 N.C.App. 724, 297 S.E.2d 626 (1982) (prosecuting photographing of unclothed child under subsection (a)(2)).
Deference to the North Carolina courts in this instance is consistent with the approach followed by the Supreme Court in similar cases. In James, the Court considered whether attempted burglary under Florida law categorically qualified as an ACCA violent felony. The Court began by noting that “[o]n its face, Florida’s attempt statute requires only that defendant take ‘any act toward the commission’ of burglary.” 550 U.S. at 202, 127 S.Ct. 1586. The Court, however, then consulted the interpretation of the attempt statute by Florida courts, which “considerably narrowed” its application by requiring that the “act” be “directed toward the entry of a structure.” Id. The Court conducted a similar analysis regarding the scope of “curtilage” under the burglary law. See id. at 212-13, 127 S.Ct. 1586 (“We must again turn to state law in order to answer this question.”); see also Johnson, 130 S.Ct. at 1269-70 (relying on the state courts’ construction of the required degree of “touching” under the state battery law). The Supreme Court has therefore rejected an approach that simply considers the statutory text and instead has grounded its analysis on the state courts’ construction of the statute.
Thus, “the particular act performed is immaterial,” and the accused’s “purpose for committing such act is the gravamen of this offense.” Hartness, 391 S.E.2d at 180. Because, under North Carolina law, the Indecent Liberties Statute’s two subsections are interchangeable and do not have different elements, the Statute regulates only one category of behavior. Cf. Rivers, 595 F.3d at 564 (declining to apply modified categorical approach to South Carolina blue light statute because “[t]here is no varied behavior underlying the elements of a blue light offense”). A violation of the Statute, therefore, does not fall in that “narrow range of cases” where the *784 court is entitled to “go beyond the mere fact of conviction” in making a violent felony determination. See Taylor, 495 U.S. at 602, 110 S.Ct. 2148.
III.
A.
My good dissenting friends, as well as several of my colleagues in the en banc majority, disagree that we are bound by North Carolina precedent to conclude that subsections (a)(1) and (a)(2) of the Indecent Liberties Statute regulate the same category of behavior, thereby foreclosing resort to the modified categorical approach.[5] Indeed, whether a violation of subsection (a)(2) constitutes a violent felony under the ACCA is quintessentially a federal question.
The ultimate federal question of whether the ACCA applies, however, can only be answered through the resolution of component inquiries, one of which is the number of offenses encapsulated in a single state statute. If the state courts have provided the answer to that subordinate question, we are obliged to accept it. See Johnson v. United States, — U.S. -, 130 S.Ct. 1265, 1269, 176 L.Ed.2d 1 (2010) (citing Johnson v. Fankell, 520 U.S. 911, 916, 117 S.Ct. 1800, 138 L.Ed.2d 108 (1997)). In this case, the answer to the subordinate question of the number of offenses set forth in the Indecent Liberties Statute has been provided by the Supreme Court of North Carolina in State v. Hartness, 326 N.C. 561, 391 S.E.2d 177, 180 (1990), and the State’s intermediate appellate courts, see State v. Jones, 99 N.C.App. 412, 393 5.E.2d 585, 589 (1990); see also State v. Jones, 172 N.C.App. 308, 616 S.E.2d 15, 20 (2005). That answer is “one.” Because the answer is not “two or more,” the modified categorical approach cannot apply to Vann’s situation.[6]
*785 Had the court in Hartness ventured beyond a pure construction of state law to address the broader federal question of whether a violation of the Statute implicates the ACCA, its decision would be of little moment here and the dissent would have a point. See Johnson v. United States, 130 S.Ct. at 1269 (rejecting contention that federal courts are bound by state court interpretation of terms found in federal statute). But the Hartness court did not stray outside its domain, and there is, therefore, no point to be had.
The dissent’s reluctance to accept the Indecent Liberties Statute as interpreted by the North Carolina courts flouts well-settled principles of federalism. Our system of dual government unequivocally designates the state courts as the arbiters of state law, and it demands that federal courts not usurp that function. See Johnson v. Fankell, 520 U.S. at 916, 117 S.Ct. 1800 (underscoring that no “federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State”).
B.
Even accommodating the position that the two subsections of the Indecent Liberties Statute are separate offenses, however, Vann prevails under the modified categorical approach.[7] The offense of sexual assault contained within the Model Penal Code is not, as the dissent supposes, a stand-in for subsection (a)(2). See post at 814-15. Although portions of the text describing the Code’s sexual assault offense bear some superficial similarity to subsection (a)(2), North Carolina precedent demonstrates that the essential elements of the two provisions are materially dissimilar.
Most pertinently, a sexual assault under the Code has as an element “sexual contact with another,” defined as “any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire.” Model Penal Code § 213.4. A violation of the Statute via subsection (a)(2), on the other hand, requires no touching or physical contact at all. See State v. Hammett, 182 N.C.App. 316, 642 S.E.2d 454, 459 (2007) (masturbating in presence of minor violates subsection (a)(2)); State v. Kistle, 59 N.C.App. 724, 297 S.E.2d 626, 628 (1982) (photographing nude minor violates subsection (a)(2)).
All the sound and fury summoned forth by the dissent, spewing statistics documenting the injury rate for sexual assault victims, hence signifies nothing. The dissent frankly admits that the study it cites “included conduct that may have a higher incidence of physical harm, like rape,” post at 823, illustrating one problem of using statistics to pinpoint “the ordinary case— i.e., the most common form” of an offense for the purpose of determining its potential risk of physical injury to another. Sykes v. United States, — U.S. -, 131 S.Ct. 2267, 2291 n. 4,180 L.Ed.2d 60 (2011) (Kagan, J., dissenting). Even the Sykes majority acknowledged that “statistics are not dispositive,” but are merely useful in an appropriate context to inform a court’s “commonsense conclusion” regarding an offense’s character as an ACCA violent felony. Id. at 2274.
*786 Here, common sense dictates the conclusion that significant differences exist between the risk of physical injury occasioned in the ordinary case by violations of subsection (a)(2) and the risk typically presented by the intentional vehicular flight offense at issue in Sykes. Committing a lewd or lascivious act upon the body of a minor does not “def[y] a law enforcement command” and “entail[ ] intentional release of a destructive force dangerous to others.” 131 S.Ct. at 2273. Unlike vehicular flight, immediate police confrontation is not the “expected result” of a subsection (a)(2) violation, inevitably “placing] property and persons at serious risk of injury.” Id. at 2274. According to the Sykes Court, a “[rjisk of violence” inheres in the offense of vehicular flight. Id. I discern no similar risk inherent in ordinary violations of subsection (a)(2), notwithstanding the worst-case scenarios paraded by the dissent, post at 823-24, the most sinister aspects of which entail empty threats of physical violence.[8]
The mention in Sykes of the risk of violence, apart from the risk of physical injury, is hardly surprising in light of the Court’s ultimate task of deciding whether vehicular flight should be deemed a “violent felony.” The dissent chides me for daring to determine whether a putative violent felony “involve[s] ... purposeful, violent, and aggressive conduct,” post at 808, but I think the prescribed commonsense approach counsels just that sort of inquiry. The residual clause speaks simply of the “risk of physical injury,” without specifying the injury’s kind or degree, but the Sykes Court’s recitation of the risk of violenee as a factor in its calculus indicates that we should consider, at least at the margins, what makes a particular felony “violent.” There is, after all, a principled difference between a hangnail and a homicide.
In that vein, and without understating the despicability of the conduct underlying violations of the Indecent Liberties Statute or the conduct’s propensity to inflict psychic harm upon its target, I cannot help but pay heed to the commonsense notion that vehicular flight is far more likely to end violently in death or debilitating physical injury. Moreover, dissimilar to the discrete perpetrator/victim dynamic invariably associated with a violation of subsection (a)(2), the sphere of effect with attendant risk of injury emanating from vehicular flight extends far beyond whoever occupies the passenger seat to envelop the driver, the police, and innocent bystanders. See Sykes, 131 S.Ct. at 2274 (citing Justice Thomas’s concurring opinion to emphasize that violations of the Indiana statute “are effected with a vehicle that can be used in a way to cause serious potential risk of physical injury to another,” and expressing concern that “chase-related crashes kill more than 100 nonsuspects every year” (emphasis added)). Engaging in this sort of intentional conduct evidencing a flagrant “lack of concern for the safety of property and persons of pedestrians and other drivers,” id. at 2273, distinguishes the vehicular flight defendant from the drunk driver in Begay v. United States, 553 U.S. 137, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008), and we may conclude that the former is more likely to *787 be “the kind of person who might deliberately point the gun and pull the trigger.” Sykes, 131 S.Ct. at 2275 (quoting Begay, 553 U.S. at 145-46, 128 S.Ct. 1581 (internal quotation marks omitted)).[9]
IV.
All that said, I concur in the judgment of the Court, as reflected in the per curiam opinion in that regard. I disagree with several of my colleagues of the en banc majority, however, in that I believe that the categorical approach resolves this appeal and that the modified categorical approach should therefore not be reached. I am pleased and honored to confirm that Judge Motz, Judge Gregory, and Judge Davis join in this opinion.

. The result of today’s en banc decision, as expressed in the Court's judgment, is ten votes (Chief Judge Traxler and Judges Wilkinson, Motz, King, Gregory, Agee, Davis, Keenan, Wynn, and Diaz) to vacate Vann’s ACCAenhanced sentence and remand for resentencing on the ground that his convictions under the Indecent Liberties Statute do not constitute ACCA violent felonies, against two votes (Judges Niemeyer and Shedd) to affirm Vann’s sentence.

. Before the panel in this appeal, the government maintained that, in light of the essential age disparity between a child victim and an adult perpetrator under the Indecent Liberties Statute, a violation thereof implies constructive force. Thus, the government contended, such a violation is necessarily an ACCA violent felony, because it has "as an element, the use, attempted use, or threatened use of physical force against the person of another.” 18 U.S.C. § 924(e)(2)(B)(i). In its en banc brief, however, the government abandoned that position, the argument having been foreclosed by the Supreme Court’s recent decision in Johnson. See 130 S.Ct. 1265. There, the Court explained that, in order to constitute a violent felony under § 924(e)(2)(B)(i), the predicate offense must have violent physical force as an element; slight touching, "intellectual force or emotional force,” is insufficient. See id. at 1270.

. The Supreme Court issued its Sykes decision in June 2011, subsequent to our en banc argument. We thereafter obtained supplemental briefing on the potential effect of Sykes on this appeal.

. Interestingly, the Indecent Liberties Statute is not codified with such crimes as rape— including statutory rape, see N.C. Gen.Stat. § 14-27.7A — at Subchapter III (“Offenses Against the Person”). Instead, the Statute is in Subchapter VII ("Offenses Against Public Morality and Decency”), alongside offenses like incest, see id. § 14-178; bigamy, see id. § 14-183; indecent exposure, see id. § 14-190.9; displaying material harmful to minors, see id. § 14-190.14; and secretly peeping into a room occupied by another person, see id. § 14-202.

. My good friend Judge Niemeyer denominates his opinion as "concurring in part and dissenting in part,” but it is rather amorphous what that nomenclature means. Judge Niemeyer is certainly dissenting from the en banc judgment vacating Vann’s sentence and remanding for resentencing, however, and he does not concur in either the per curiam opinion of the en banc majority or any of the Court's several other opinions. The judgment of the Court to vacate and remand is unitary, and may not be parsed as Judge Niemeyer suggests, post at 808-09 & nn. 1-2, though various judges supporting the judgment may express through separate opinions different reasons for so doing, and may even agree with judges opposed to the judgment as to constituent propositions or conclusions short of the ultimate issue. See Fed. R.App. P. 36 (specifying that clerk enters "judgment” upon receiving court’s conceptually distinct "opinion" or instructions); Fed. R.App. P. 41(a) (defining court’s mandate as comprised of, inter alia, "a certified copy of the judgment [and] a copy of the court’s opinion, if any”). Thus, although Judge Niemeyer might accurately predict, post at 809 n. 2, that a majority of this Court, in a hypothetical future case, would somehow conclude a properly proved violation of subsection (a)(2) to be an ACCA violent felony, there is certainly no majority consensus emanating from our decision today as to why that may be so.

. The non-precedential decision of the Court of Appeals of North Carolina in State v. Moss, No. COA07-607, 2008 WL 435095 (N.C.Ct. App. Feb. 19, 2008) (unpublished), trumpeted by the dissent, post at 816-17, is in no way contrary to the consistent body of authoritative North Carolina case law. The court in Moss vacated the defendant’s conviction under the Indecent Liberties Statute because a so-called "fatal variance” at trial amounted to plain error. The variance occurred because the indictment charged the defendant solely under subsection (a)(1), but the jury was instructed to convict only if it found the specific conduct underlying subsection (a)(2). See id. at *2. The court’s decision was not premised, as the dissent would have it, upon the two subsections describing different offenses, but upon the deprivation of fundamental due process rights "on a theory not supported by the indictment.” Id. at *3 (emphasis added).

. Notwithstanding my friend Judge Niemeyer’s characterization of my opinion, post at 808, my view of this appeal is unabashedly uncomplicated. The categorical approach resolves the sentencing issue in Vann's favor. and we are not entitled to reach and address the modified categorical approach. Assuming the modified categorical approach applies, however, Vann prevails in any event.

. Writing separately in Sykes, Justice Thomas observed that ”[t]he fact that Sykes can imagine a nonrisky way to violate [the Indiana statute] does not disprove that intentional vehicular flight is dangerous in the ordinary case.” Sykes, 131 S.Ct. at 2281 (Thomas, J., concurring in the judgment) (citation and internal quotation marks omitted). Surely the converse proposition is also true: that the dissent can illustrate risky ways to violate subsection (a)(2) does not establish that such violations are dangerous in their most common form.

. I admire and appreciate the characteristically well-crafted separate opinion of my good friend Judge Wilkinson, concurring in the judgment, but I take especial issue with one aspect of it. Employing the categorical approach in this case would not, as the separate opinion prognosticates, “have the unintended effect of visiting serious harms on children.” Post at 806. This opinion simply results, as do the various separate opinions, from conscientious efforts to apply the applicable law to the relevant facts. Indeed, our Court possesses no power or authority to do otherwise. The concern of my good friend should therefore not be directed at his court colleagues, but to the governmental bodies that created the controlling legal principles. That said, I am pleased that my friend agrees with the result that our Court has reached in this case.