PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

  *Plaintiff-Appellee,*

v.

MIRNA DEL CARMEN GOMEZ,

  *Defendant-Appellant.*

No. 12-4089

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Deborah K. Chasanow, Chief District Judge.
(8:11-cr-00015-DKC-1)

Argued: May 15, 2012

Decided: August 10, 2012

Before NIEMEYER, MOTZ, and FLOYD, Circuit Judges.

Vacated and remanded by published opinion. Judge Floyd
wrote the majority opinion, in which Judge Motz joined.
Judge Niemeyer wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Joanna Beth Silver, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Baltimore, Maryland, for Appellant.
Paul Nitze, OFFICE OF THE UNITED STATES ATTOR-
NEY, Greenbelt, Maryland, for Appellee. **ON BRIEF:** James

Wyda, Federal Public Defender, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellee.

**OPINION**

FLOYD, Circuit Judge:

Mirna Del Carmen Gomez, a citizen of El Salvador, pleaded guilty to a charge of unlawful reentry of a deported alien after an aggravated felony conviction, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). Although she agreed with the statement of facts submitted by the government in support of her guilty plea, Gomez objected to the government's assertion that her prior conviction for child abuse under Maryland law amounted to a crime of violence for purposes of the U.S.S.G. § 2L1.2(b)(1)(A)(ii) sentencing enhancement. According to Gomez, because the relevant portion of the statute did not contain a division between forceful and nonforceful conduct, the district court could not use the modified categorical approach to determine that her prior child abuse conviction was a crime of violence.

Despite this objection, in calculating the relevant Sentencing Guidelines range, the district court employed the modified categorical approach to determine that Gomez's child abuse conviction constituted a crime of violence. For this reason, the district court added sixteen levels to Gomez's base offense level. Thereafter, the district court calculated her Guidelines range to be forty-one to fifty-one months, but made a downward variance and sentenced her to twenty-four months' imprisonment. This appeal followed. Because we find that the district court's application of the modified categorical approach to the indivisible provision at issue was in error, we vacate Gomez's sentence and remand for resentencing.

## I.

On August 20, 1999, Gomez pleaded guilty in Maryland state court to one count of child abuse, in violation of Maryland Code 1957, Article 27, § 35C. At the state plea hearing, she admitted that, to punish her son, she had burned the bottoms of his feet with a candle. The state court sentenced her to eighteen months' imprisonment.

In January 2001, Gomez was deported from the United States. Sometime around December 2010, however, she reentered the United States without having sought or obtained permission to reenter. Gomez was arrested on December 16, 2010. Approximately five months later, she pleaded guilty to a charge of unlawful reentry of a deported alien after an aggravated felony conviction, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). She noted at the time, however, that her prior conviction for child abuse under Maryland law was not a crime of violence for purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii), which allowed for a sixteen-level increase in her offense level if she has been convicted of a "crime of violence."

In written memoranda and at the sentencing hearing held on February 1, 2012, the parties set forth their arguments on this issue. The government maintained that "the Maryland child abuse statute under which [Gomez] was convicted has as an element the use, attempted use, or threatened use of physical force against the person of another." It further contended that the child abuse statute under which Gomez was convicted "actually requires physical injury rather than just the use of force that is capable of causing physical injury and therefore categorically satisfies the Supreme Court's definition of physical force." Alternatively, the government suggested that the district court should employ the modified categorical approach. And under this approach, the government noted, "a review of the charging document and transcript of the plea colloquy makes clear that [Gomez's]

conviction for child abuse was a conviction for a crime of vio-lence pursuant to [§ 2L1.2]." As the government pointed out, "[t]he statement of facts offered during the plea colloquy states that upon her arrest [Gomez] admitted that [she] took a candle and burned the bottoms of her minor son's feet as punishment."

In contrast, Gomez argued that her child abuse conviction was not a crime of violence. "And . . . if it's not a crime of violence, it's not an aggravated felony under the facts of this case." Moreover, according to Gomez, the district court could look no further than the elements of the Maryland child abuse statute in deciding whether her prior conviction could be found to be a crime of violence. Consequently, Gomez avowed, because the statute at issue "does not have an ele-ment of 'violent force' . . . [it] does not constitute a 'crime of violence' under [§ 2L1.2]."

At the hearing's conclusion, the district court determined it appropriate to employ the modified categorical approach to decide whether Gomez's prior child abuse conviction was a crime of violence. It observed that the Maryland child abuse statute "is broad enough to encompass crimes of violence under some circumstances. And that, therefore, we can look at the permitted universe of documents to determine what kind of child abuse conviction this was."

The district court then noted that the statement of facts to which Gomez admitted at the state plea hearing indicated that hers was a forceful child abuse conviction. Therefore, the dis-trict court concluded that "it was a crime of violence and is appropriately assigned [an] enhancement of 16 levels." The resultant Guidelines range for Gomez was forty-one to fifty-one months' imprisonment.

The district court proceeded to determine Gomez's sen-tence. It observed that "[t]he [G]uidelines are advisory and the Court needs to look at all the facts and circumstances of a par-

ticular case." It then sentenced Gomez to twenty-four months' imprisonment, stating that the sentence "is sufficient to punish Ms. Gomez and to teach her enough of a lesson that she will think more than once before being tempted to return to the United States." Gomez subsequently filed this timely appeal.

## II.

Gomez argues that the district court erred in employing the modified categorical approach to determine that her prior conviction for child abuse under Maryland law constituted a crime of violence. In so doing, according to Gomez, the district court improperly examined the particular acts that she committed to decide if those acts amounted to a crime of violence. The government asserts, however, that "the district court properly used the modified categorical approach to determine which portion of the child abuse statute was violated in [her] prior case."

Whether the district court erred in characterizing a defendant's crime as a "crime of violence" for sentence enhancement purposes is a question of law, which we review de novo. *United States v. Diaz-Ibarra*, 522 F.3d 343, 347 (4th Cir. 2008). "We rely on precedents evaluating whether an offense constitutes a 'crime of violence' under the Guidelines interchangeably with precedents evaluating whether an offense constitutes a 'violent felony' under the ACCA, because the two terms have been defined in a manner that is 'substantively identical.'" *United States v. King*, 673 F.3d 274, 279 n.3 (4th Cir. 2012) (quoting *United States v. Jarmon*, 596 F.3d 228, 231 n.* (4th Cir. 2010)).

## A.

As stated earlier, U.S.S.G. § 2L1.2(b)(1)(A)(ii) provides for a sixteen-level increase in the offense level if the defendant has been convicted of a "crime of violence."

> "Crime of violence" means any of the following offenses under federal, state, or local law: Murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

*Id.* § 2L1.2 cmt. n.1(B)(iii).

"In determining whether [a] crime is a violent felony, we consider the offense generically, that is to say, we examine it in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008). When making this determination, "courts generally employ a categorical approach, under which consideration is given only to the essential elements of the offense and the fact of conviction." *United States v. Baxter*, 642 F.3d 475, 476 (4th Cir. 2011).

We have found it appropriate to vary this approach only "where different types of behavior satisfy an element of the offense and the proscribed behaviors constitute at least two separate crimes for ACCA purposes." *United States v. Rivers*, 595 F.3d 558, 562-63 (4th Cir. 2010). "Thus, only when a statute prohibits different types of behavior such that it can be construed to enumerate separate crimes can a court modify the categorical approach to determine ACCA eligibility." *Id.* at 563.

Under the modified categorical approach, we "'look only to the fact of conviction and the statutory definition of the prior

offense,'" and we generally do not consider the "particular facts disclosed by the record of conviction." *Shepard v. United States*, 544 U.S. 13, 17 (2005) (quoting *Taylor v. United States*, 495 U.S. 575, 602 (1990)). In making this determination, the district court may examine a limited universe of documents relevant to the underlying conviction. *Id.* at 26. This examination, however, is for the sole purpose of determining which part of the statute the defendant violated. "[B]y so construing the statute, one avoids the practical difficulty of trying to ascertain at sentencing, perhaps from a paper record mentioning only a guilty plea, whether the present defendant's prior crime, as committed on a particular occasion, did or did not involve violent behavior." *Chambers v. United States*, 555 U.S. 122, 125 (2009).

Supreme Court precedent disallows a district court from determining whether the specific conduct of the defendant constituted a purposeful, violent, and aggressive act. *See Shepard*, 544 U.S. at 25 (discussing the problems inherent in judicial fact-finding, especially after *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and noting that looking further into the facts surrounding a prior conviction likely would violate the standard set forth in *Apprendi*). Thus, district courts may not decide on a case-by-case basis whether a defendant's particular conduct in committing a prior violation of a general statute amounts to the type of violence allowing for the enhancements set forth in the ACCA and the Guidelines. *United States v. Woods*, 576 F.3d 400, 405-06 (7th Cir. 2009). The modified categorical approach therefore applies to only "a narrow range of cases"—those involving statutes encapsulating separate proscriptions, at least one of which constitutes a crime of violence. *Taylor*, 495 U.S. at 602.

To the extent that there was any confusion on the issue, the Supreme Court clarified the proper use of the modified categorical approach in *Johnson v. United States*, 130 S. Ct. 1265 (2010). There, the Supreme Court stated, in relevant part:

> When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the "'modified categorical approach'" . . . permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms.

*Id.* at 1273 (citation omitted). But these documents may be consulted only for the purpose of "determining which statutory phrase (contained within a statutory provision that covers several different generic crimes) covered a prior conviction." *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009).

Although not with a single voice, we have had occasion to address the proper use of the modified categorical approach since *Johnson*. In his concurrence in *United States v. Vann*, 660 F.3d 771 (4th Cir. 2011) (en banc), Judge King, joined by Judges Motz, Gregory, and Davis, wrote the following: "Use of the modified categorical approach is only appropriate when the statute of conviction encompasses multiple distinct categories of behavior, and at least one of those categories constitutes an ACCA violent felony." *Id.* at 778 (King, J., concurring). Moreover, Judge Keenan, joined by Chief Judge Traxler and Judges Agee, Wynn, and Diaz, stated that "[t]he issue [of] whether we may apply the modified categorical approach under the ACCA depends on an examination of the different criminal elements of a statute and on the stated behaviors that these elements proscribe, not on any particular conduct that may be encompassed by a given statutory proscription." *Id.* at 801 (Keenan, J., concurring). These statements, which commanded a majority of the judges of this Court, suggest that district courts may apply the modified categorical approach to a statute only if it contains divisible cate-

gories of proscribed conduct, at least one of which constitutes—by its elements—a violent felony.

The majority of our sister circuits that have considered the question likewise have held that the modified categorical approach applies only to those statutory offenses in which the statute itself is divisible. *See, e.g.*, *United States v. Miranda-Ortegon*, 670 F.3d 661, 663 (5th Cir. 2012) (footnote omitted) ("We may take a modified categorical approach, permitting consultation of the allegations in the charging instrument, if the statute of conviction has disjunctive elements. But we may look beyond the elements and the fact of conviction only for the limited purpose of ascertaining which of the disjunctive elements the charged conduct implicated."); *United States v. Baker*, 665 F.3d 51, 55 (2d Cir. 2012) (per curiam) (stating that the statute of the prior conviction must be divisible such that it defines the violent felony in a separate subsection or component of a disjunctive list); *United States v. Koufos*, 666 F.3d 1243, 1251 (10th Cir. 2011) ("[The modified categorical] approach does not involve a subjective inquiry into the facts of the case; instead, we seek to determine 'which part of the statute was charged against the defendant and, thus, which portion of the statute to examine on its face.'" (quoting *United States v. Sanchez–Garcia*, 501 F.3d 1208, 1211 (10th Cir. 2007))); *United States v. Mahone*, 662 F.3d 651, 654 (3d Cir. 2011) ("When the enumerating statute invites inquiry or the statute of conviction is phrased in the disjunctive, the sentencing court applies a modified approach, rather than the formal categorical approach."); *United States v. Williams*, 627 F.3d 324, 327-28 (8th Cir. 2010) (stating that when the statute of conviction encompasses some conduct that qualifies as a crime of violence and some that does not, it is appropriate for the district court to use the modified categorical approach wherein it consults *Shepard*-approved documents to determine the portion of the statute that was the basis for the prior conviction); *Woods*, 576 F.3d at 404-05 (emphasizing that the appropriate way to apply the modified categorical approach is to look, not to the conduct of the defendant, but to which part

of a divisible statute the defendant violated). *But see United States v. Aguila-Montes de Oca*, 655 F.3d 915, 932-35 (9th Cir. 2011) (en banc) (stating that the Fourth Circuit, in *Rivers*, "limited the modified categorical approach to the divisible statute situation" but rejecting that rule for the Ninth Circuit).

When examining a prior conviction to determine if it is a crime of violence, the Supreme Court has counseled that the district court must look not at the manner in which the defendant in fact committed the crime, but at the statutory violation charged. *Begay*, 553 U.S. at 141. Thus, if the statute is divisible, with some categories constituting a crime of violence and some not constituting a crime of violence, then it is appropriate for the district court to employ the modified categorical approach and to examine *Shepard*-approved documents to ascertain whether the defendant violated a crime-of-violence category of the statute. But if the district court were to apply the modified categorical approach to an indivisible statute, it would be required to look at the manner in which the defendant committed the crime (i.e., the specific factual circumstances of the crime) in direct contravention of Supreme Court dictates.

In our view, the Supreme Court made clear in *Johnson* that the modified categorical approach necessarily applies only to those statutory offenses in which the statute itself is divisible. It did so by stating that the district court can make factual inquiries only when "the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not." *Johnson*, 130 S. Ct. at 1273. That is, the Supreme Court explicated that in employing the modified categorical approach the district court may look to the trial record only to "determine which statutory phrase was the basis for the conviction." *Id.* Any cases which have held to the contrary were necessarily overruled by *Johnson*.

Consequently, conforming to Supreme Court precedent, and joining the majority of our sister circuits to consider the

issue, we hold that the modified categorical approach applies only to those statutory offenses in which the statute itself is divisible. To hold otherwise would be to sanction the district court conducting a mini-trial to resolve whether the actions of the defendant amounted to a crime of violence. *See United States v. Spence*, 661 F.3d 194, 198 (4th Cir. 2011) ("By [properly] applying the categorical and modified categorical approaches, sentencing courts avoid conducting 'mini-trials' for each prior offense, which would constitute an inconsistent and unreliable method on which to base enhanced sentences. Moreover, use of such mini-trials to determine the nature of an underlying crime potentially would violate a defendant's Sixth Amendment rights." (citation omitted)). Of course, what one district court might find as violent behavior on the part of the defendant, another district court might not so find. Thus, sometimes the particular crime would be considered a crime of violence and sometimes it would not. Moreover, it would permit district courts to make this determination based on often vague or uncertain paper records, not intended to serve as such fact-finding tools. This is barred by Supreme Court precedent.

## B.

As noted above, in 1999, Gomez pleaded guilty to one count of child abuse, in violation of Maryland Code 1957, Article 27, § 35C, at which time she admitted that, to punish her son, she had burned the bottoms of his feet with a candle.

Section 35C defines the term "abuse" as follows:

> (i) The sustaining of physical injury by a child as a result of cruel or inhumane treatment or as a result of a malicious act by any parent or other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member, under circumstances

that indicate that the child's health or welfare is harmed or threatened thereby; or

(ii) Sexual abuse of a child, whether physical injuries are sustained or not.

Maryland Code 1957, Article 27, § 35C. There is no dispute between the parties that Gomez's conduct constituted abuse as defined in subsection (i).

Here, we begin—as we must—by examining § 35C(i). In doing so, we recognize that it does not require the use of physical force. Pursuant to § 35C(i), a defendant may be found guilty of physical child abuse by committing an affirmative act or by neglecting to act, neither of which necessarily requires the use of physical force against a child. *See State v. Fabritz*, 348 A.2d 275, 280 (Md. 1975). Further, § 35C(i) contains no divisions—either facially or judicially determined—regarding the use or absence of physical force. Moreover, there are no separate categories in § 35C(i) delineating between affirmative and nonaffirmative acts.

This is not to say that the statute itself is indivisible. It is divisible. Section 35(c) can be divided into two categories: physical abuse and sexual abuse. Moreover, physical abuse can be divided further into subcategories: cruel or inhumane treatment, and malicious acts. But, notably, it is not divisible into forceful or nonforceful acts.

The statute is, however, expansive. For instance, the Maryland Court of Appeals observed the following:

When examining the breadth of conduct that fell under the umbrella of child sexual abuse in Section 35C and also falls within the current iteration of the child abuse statute, we consistently have observed that the Legislature intended for the statute to cover a wide range of conduct.

*Crispino v. State*, 7 A.3d 1092, 1099 (Md. 2010).

Similarly, thirty-five years before *Crispino*, Maryland's highest court stated the following:

> In making it an offense for a person having custody of a minor child to 'cause' the child to suffer 'a physical injury,' the Legislature did not require that the injury result from a physical assault upon the child or from any physical force initially applied by the accused individual; it provided instead, in a more encompassing manner, that the offense was committed if physical injury to the child resulted either from a course of conduct constituting 'cruel or inhumane treatment' or by 'malicious act or acts.'

*Fabritz*, 348 A.2d at 280. The court later explained that the philosophical underpinning of the statute is that "[c]hild abuse and the underlying crimes involve separate societal evils." *Fisher v. State*, 786 A.2d 706, 721 (Md. 2001) (quoting a letter from an Assistant Attorney General, with approval). "The underlying crime is one of violence against a member of society. Child abuse is a breach of custodial or familial trust. The two crimes should be punished separately and the person who violates both laws should be exposed to a greater possible penalty." *Id.* In other words, the gravamen of child abuse under § 35C is "the breach of custodial or familial trust[,]" and not the particular manner in which the child was abused (i.e., with or without force).

Under Supreme Court precedent, for the modified categorical approach to apply to the facts of this case, we are required to separate forceful and nonforceful acts in § 35C(i). But, as already noted, that is impossible to do here in that every part of § 35C(i) can be accomplished with or without the use of physical force. That is, it is a violation of § 35C(i) when one with custodial or familial care of a child causes—with or without physical force—that child to sustain physical injury

by means of "cruel or inhumane treatment or as a result of a malicious act." § 35C(i).

In determining that Gomez's prior conviction constituted a crime of violence, the district court looked at the manner in which she committed child abuse to determine whether it was a crime of violence. But, as detailed above, this violates the Supreme Court's mandate that the district court is to look only to the crime of conviction, and not at the defendant's conduct in committing the crime, to decide whether the defendant committed a crime of violence. Stated differently, the district court should have examined the trial record to determine whether Gomez committed a statutory violation constituting a crime of violence. Instead, it examined the trial record to decide if Gomez acted violently in abusing her son.

C.

Except for common law based crimes in which the offenses have been judicially defined, there are no post-*Johnson* Fourth Circuit cases examining an indivisible statute wherein we have approved use of the modified categorical approach to determine if a prior conviction was a crime of violence for enhancement purposes.

Nevertheless, according to the government, "[g]iven the relationship between assault and battery and physical child abuse under Maryland law, the applicability of the modified categorical approach to prior convictions for physical child abuse is reinforced by this Court's precedent concerning the modified categorical approach and Maryland assault and battery convictions." Thereafter, it points to the citation in *Johnson* of one of our cases, *United States v. Simms*, 441 F.3d 313 (4th Cir. 2006), in support of its position that the Supreme Court approved of our use of the modified categorical approach as applied to Simms's prior battery conviction under Maryland law. *See Johnson*, 130 S. Ct. at 1273.

We need not decide whether the Supreme Court meant to signal its approval, as we are unconvinced that Maryland's assault and battery law has any bearing on our analysis as to the appropriateness of the use of the modified categorical approach in this case. Suffice it to say that the crime of assault and battery is based in common law and, as such, its elements are judicially determined. *See United States v. Alston*, 611 F.3d 219, 222 (4th Cir. 2010) (stating that the common-law crime of assault in Maryland includes "the crimes of assault, battery, and assault and battery, which retain their judicially determined meanings." (quoting Md. Code Ann., Crim. Law § 3–201(b)) (internal quotation marks omitted)); *United States v. Kirksey*, 138 F.3d 120, 125 (4th Cir. 1998) ("Because Maryland recognizes common law crimes, no statute defines their elements. But the Maryland case law fully articulates them."). Here, however, we are concerned with the divisions within a statute, not a common law crime.

## D.

In sum, as the Fifth Circuit held in *Andino-Ortega*, "[a]lthough the actual conduct described involved the use of physical force, that is irrelevant for the purposes of this case. The inquiry is whether the use of physical force is an element under the statute of conviction, not whether the defendant's actual conduct involved the use of physical force." 608 F.3d at 310 n.1. Hence, because there is no divisible use-of-force element under § 35C(i), the district court's employment of the modified categorical approach to determine that it was a crime of violence was improper.

## III.

In the alternative, the government maintains that, even if the district court erred in its determination of Gomez's Guidelines range, the error was harmless because the district court's imposition of the enhancement did not affect Gomez's ultimate sentence. The government contends that "[b]ecause the

court arrived at the 24-month sentence purely through reference to the section 3553(a) factors (especially deterrence), a remand to recalculate the advisory [G]uidelines range would be a pointless exercise." We are unconvinced.

For us to find harmless error, we must be certain that "(1) . . . the district court would have reached the same result even if it had decided the [G]uidelines issue the other way, and (2) a determination that the sentence would be reasonable even if the [G]uidelines issue had been decided in the defendant's favor." *United States v. Savillon-Matute*, 636 F.3d 119, 123 (4th Cir. 2011) (quoting *United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006)) (internal quotation marks omitted)).

Although the district court did a commendable job in considering the 18 U.S.C. 3553(a) factors in determining the sentence that it would impose, we are unable to state with any certainty that it would have imposed the same sentence had the sixteen-level enhancement not been in play.

With the enhancement, the Guidelines range was forty-one to sixty-one months' imprisonment. But, without the enhancement, Gomez's Guidelines range would have been eight to fourteen months' imprisonment. Although the district court imposed a substantial downward variance in arriving at Gomez's sentence of twenty-four months' imprisonment, we can find nothing in the record to suggest that the district court would have varied upwards to arrive at a twenty-four month sentence. Thus, we are unable to declare the error harmless.

## IV.

For the foregoing reasons, we vacate Gomez's sentence and remand for resentencing.

*VACATED AND REMANDED*

NIEMEYER, Circuit Judge, dissenting:

After pleading guilty in May 2011 to unlawful reentry into the United States, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2), Mirna Gomez was sentenced to 24 months' imprisonment—a sentence that was enhanced by reason of her 1999 conviction for child abuse under Maryland Code, Art. 27, § 35C. In view of the fact that Gomez, when pleading guilty in 1999 to child abuse, admitted to abusing her son by burning the bottoms of his feet with a candle to punish him, the district court, using the modified categorical approach, concluded that the 1999 conviction qualified as a crime of violence, authorizing the sentencing enhancement for unlawful reentry under U.S.S.G. § 2L1.2(b)(1)(A)(ii) (providing for the enhancement of sentences for unlawfully reentering the United States after having been convicted for a felony that is "a crime of violence").

The majority, surprisingly, is unwilling to allow the use of the modified categorical approach to recognize Gomez's admission of violent conduct in pleading guilty to the 1999 charge, taking the position that because the Maryland statute punishing child abuse is ambiguous and nondivisible—allowing a conviction based on conduct that is either violent or nonviolent (such as child neglect)—the district court erred in employing the modified categorical approach to find the conviction to be a predicate conviction for a sentencing enhancement under U.S.S.G. § 2L1.2(b). The majority holds that as a condition of employing the modified categorical approach, the statute under consideration must *itself* be divided into "categories" with some "constituting a crime of violence and some not constituting a crime of violence." *Ante*, at 10. It rejects the cases that employ the modified categorical approach to a statute not so divided on its face but so divided by governing judicial interpretation, such as an assault statute. The majority takes this position even though it agrees that if it were to apply the modified categorical approach, we could consider such an admission and the admission would support

the finding that Gomez's prior conviction was a "crime of violence."

Unfortunately, the majority's opinion adopts an entirely new rule that (1) is not mandated by any Supreme Court decision; (2) is indeed inconsistent with a long line of Fourth Circuit cases, including cases cited approvingly by the Supreme Court; (3) is both impractical and illogical; and (4) aggravates a split among the circuits.[1]

I dissent with no insubstantial amount of perplexity on why we need to adopt this novel approach when it serves no practical end and undermines the principles underlying the Supreme Court's creation of the categorical and modified categorical approaches in the first instance. In determining what convictions qualify as a sentencing enhancement, courts are authorized to use the modified categorical approach pragmatically *whenever* the approach yields an answer, in circumstances made ambivalent by an overbroad statute, to whether the prior conviction qualifies as a predicate conviction, *so long as* the use of the approach avoids "subsequent evidentiary inquiries in the factual basis for the earlier conviction" and "collateral trials." *Shepard v. United States*, 544 U.S. 13, 20, 23 (2005). The majority appears to misconceive the task and the role that the modified categorical approach is allowed to serve in carrying out the task. It assumes that applying the modified cate-

---

[1]In *United States v. Woods*, 576 F.3d 400 (7th Cir. 2009), the Seventh Circuit adopted a per se rule limiting the modified categorical approach to facially divisible statutes. The Fifth, and Eighth Circuits have similar policies. *See, e.g.*, *United States v. Gonzalez-Terrazas*, 529 F.3d 293, 297-98 (5th Cir. 2008); *United States v. Boaz*, 558 F.3d 800, 807-08 (8th Cir. 2009). The Ninth Circuit, which had previously adopted the same rule as *Woods*, reversed course in *United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc). It now applies the modified categorical approach to both divisible and indivisible statutes. The Sixth and Tenth Circuits follow a similar approach. *See, e.g.*, *United States v. Ventura-Perez*, 666 F.3d 670 (10th Cir. 2012); *United States v. Armstead*, 467 F.3d 943 (6th Cir. 2006). The remaining circuits do not appear to have conclusively resolved the issue either way.

gorical approach to statutes that are not divided within themselves would impermissibly lead to the conduct of "mini-trial[s] to resolve whether the action of the defendant amounted to a crime of violence," *ante*, at 11, completely overlooking the fact that application of the modified categorical approach by definition and certainly in this case does not require a mini-trial. Moreover, little thought is given to the fact that the majority's holding effectively overrules well nigh a dozen Fourth Circuit decisions and aggravates a senseless circuit split.

I

Gomez, a citizen of El Salvador, pleaded guilty on May 31, 2011, to a single count charging her for unlawful entry as a deported alien after having committed an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). During sentencing, the government urged that Gomez's sentence be enhanced pursuant to U.S.S.G. § 2L1.2(b) because Gomez had a prior conviction for a "crime of violence." Specifically, it noted that in 1999, Gomez pleaded guilty in state court to a violation of Maryland's child abuse statute, then codified as Maryland Code. Art. 27, § 35C,[2] and that, during the plea colloquy, admitted to burning the bottoms of her eight-year-old son's feet with a candle, to punish the child. The government argued that this conviction for child abuse qualified as a predicate crime of violence under either the categorical or modified categorical approach articulated in *Taylor v. United States*, 495 U.S. 575 (1990).

Gomez objected to the enhancement. She contended that a conviction under Maryland's child abuse statute was not categorically a crime of violence because the statute did not *require* as an element the use of physical force. She also contended that the breadth of the conduct covered by the statute,

---

[2]Article 27, § 35C, is now codified at Maryland Code, Criminal Law, § 3-601.

without specifically proscribing violent and nonviolent con-
duct, made the modified categorical approach inappropriate to
use in her case because the crime could have been committed
by the nonviolent conduct of neglect.

At the sentencing hearing, the district court agreed with
Gomez that a violation of the Maryland child abuse statute
was not categorically a crime of violence. But it also con-
cluded, relying on Fourth Circuit precedents, that the *modified
categorical approach was applicable* because "the fact of
conviction and the definition under Maryland law were
unduly vague or ambiguous. Where there is a broadly defined
offense under Maryland law, thus precluding a determination
of whether a conviction constituted a violent felony, then the
modified categorical approach can be used." The court
explained:

> We are dealing with a statute that I find does not cat-
> egorically include the use of force, but that it broadly
> encompasses some act by a defendant to cause phys-
> ical injury and that that like battery and second-
> degree assault might be forced, but it could be some-
> thing less direct. And that, therefore, it is broad
> enough to encompass crimes of violence under some
> circumstances. And that, therefore, we can look at
> the permitted universe of documents to determine
> what kind of child abuse conviction this was.

> And here, I believe it is conceded in the Statement
> of Facts in the plea transcript to indicate that this was
> a forceful child abuse conviction. And that, there-
> fore, it was a crime of violence and is appropriately
> assigned an enhancement of 16 levels [under
> U.S.S.G. § 2L1.2(b)(1)(A)(ii)].

Applying the 16-level enhancement based on Gomez's
child abuse conviction, the district court found Gomez's Sen-
tencing Guidelines range to be 41 to 51 months' imprison-

ment. After hearing additional arguments from the parties and considering the statutory factors of 18 U.S.C. § 3553(a), the court imposed a variance sentence of 24 months' imprisonment.

Gomez filed this appeal, challenging only the district court's consideration of her 1999 child abuse conviction to enhance her sentence.

## II

The question before us is whether, in considering a prior Maryland conviction for child abuse to enhance a sentence under 8 U.S.C. § 1326(b)(2) and U.S.S.G. § 2L1.2(b), we may employ the modified categorical approach recognized in *Taylor*.

When the nature and purpose of the modified categorical approach are considered, the approach is properly recognized as a *pragmatic* rule that enables the court to determine whether a prior conviction qualifies as a predicate offense, according to the wishes of Congress, without engaging in undue factfinding that would effectively retry the facts of the prior conviction. As a pragmatic rule, it allows an array of ways to examine prior convictions to determine whether they qualify, imposing limitations only to protect the prior conviction from subsequent factfinding and retrials.

In *Taylor*, the Supreme Court considered whether a conviction under Missouri's burglary statutes qualified as a predicate "burglary" conviction under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2), to enhance a sentence for a violation of 18 U.S.C. § 922(g)(1) (prohibiting a felon from possessing a firearm). To resolve that question, the Court determined first that Congress intended "burglary" and all other predicate offenses in ACCA to be defined uniformly for use in all federal sentencing. When accomplishing this purpose, the Court considers each statutorily listed predicate

offense "generically, that is to say . . . in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008). As the term "burglary" was used in § 924(e)(2), therefore, the *Taylor* Court concluded that the statute referred to a "generic" crime, which, it determined from consensus, was the "unlawful or unprivileged entry into, or remaining in a building or structure, with the intent to commit a crime." *Taylor*, 495 U.S. at 599.

The Court then faced the question of how to determine whether the defendant's Missouri convictions amounted to generic burglary as used in § 924(e)(2), particularly when Missouri defined burglary "more broadly" than generic burglary, punishing unlawful entries not only into buildings and structures but also into boats, automobiles, and railroad cars. Recognizing that the categorical approach, which the Court noted was necessary to avoid a reconsideration of facts and effectively a retrial of the prior case, the Court concluded that a Missouri conviction *could* nonetheless qualify as a generic offense if it could determine that the jury in the Missouri conviction "was actually required to find all the elements of generic burglary." 495 U.S. at 602. The Court explained:

> For example, in a State whose burglary statutes including entry of an automobile as well as a building, if the indictment or information in jury instructions show that the defendant was charged only with the burglary of a building, and the jury necessarily had defined an entry of a building to convict, then the government should be allowed to use the conviction for enhancement.

*Id.* The Court thus held that when determining whether a prior conviction under a statute *broader* than generic burglary qualifies as an enhancing conviction under federal law:

an offense constitutes "burglary" for purposes of § 924(e) sentence enhancement if either its statutory definition substantially corresponds to "generic" burglary, or the charging paper and jury instructions actually required the jury to find all the elements of generic burglary in order to convict the defendant.

*Id.*

The principles of *Taylor* have always been understood to be a "pragmatic" approach "to identify generic convictions" under state law even when state laws are broader than the generic convictions. *Shepard*, 544 U.S. at 20. The determination of qualifying convictions has simply focused on the avoidance of "subsequent evidentiary enquiries into the factual basis for the earlier conviction," *id.* at 20, *i.e.*, the "avoidance of collateral trials," *id.* at 23. The *Shepard* Court thus reiterated the *Taylor* rule:

We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.

*Id.* at 26.

Because state statutes are frequently broader than the generic crime listed in the enhancing statute, such as was the case in *Taylor*, courts may conduct various analyses of the state laws to determine whether a conviction under them was for a nongeneric crime or a listed generic crime. The easiest analysis occurs when the state statute itself differentiates nongeneric crimes from generic crimes in separately marked sec-

tions of the statute. Thus, when the *Shepard*-approved documents reveal that a defendant was convicted of the generic crime listed in the enhancement statute, because his state conviction was under a specifically identified section of the statute that qualified as a generic crime, then the conviction can readily be used to enhance the federal sentence. *See*, *e.g.*, *United States v. Chambers*, 555 U.S. 122 (2009); *Johnson v. United States*, 130 S. Ct. 1265, 1273 (2010).

And almost as easy are circumstances where the state statute defines different crimes in a series of words or phrases, some of which would qualify as predicate offenses and some of which would not. Again, if the *Shepard*-approved documents reveal that a defendant was *necessarily* convicted of a qualifying generic crime—the generic uniform crime in the enhancing statute—then again the conviction could be used to enhance the sentence. *See, e.g.*, *Taylor*, 495 U.S. at 599-600.

Finally, there are state statutes defining offenses generally that are broader than the generic crimes listed in the enhancing statute but that do not include words or phrases articulating the variations of conduct that would violate the statute, such as some statutes criminalizing assault and battery, escape, or child abuse. In these cases where the state statutes do not spell out the different behaviors that amount to conviction, the state's courts usually have. Thus, courts have construed a battery to include a violent beating, as well as an unwanted touching; or escape to include the violent escape from custody, as well as the simple failing to report; and child abuse to include violent physical force against a child, as well as simply child neglect. In this way, the state's courts have construed the statutes to include both conduct that qualifies as violent so as to qualify as a predicate offense and conduct that is nonviolent that does not qualify as a predicate offense. But again, when the *Shepard*-approved documents enable a court to determine that a defendant was convicted of a generic qualifying offense—*i.e.*, a crime of violence—the conviction has been used as a predicate offense to enhance a sentence. *See*,

*e.g.*, *United States v. Harcum*, 587 F.3d 219 (4th Cir. 2009) (assault and battery); *United States v. Bethea*, 603 F.3d 254 (4th Cir. 2010) (escape).

In sum, the Supreme Court has recognized that the modified categorical approach may be used whenever (1) the state statute under which the defendant was convicted is "broader" than the qualifying generic offense; and (2) when "a jury was actually required to find all the elements of a generic [offense]," *Taylor*, 495 U.S. at 602, or "a plea of guilty to [an offense] defined by a nongeneric statute necessarily admitted elements of the generic offense," *Shepard*, 544 U.S. at 26. When those conditions exist, courts are authorized to look at the *Shepard*-approved documents to determine whether the prior conviction necessarily was one that qualified as a conviction for the generic offense of the enhancing statute. *See also United States v. Diaz-Ibarra*, 522 F.3d 343, 348 (4th Cir. 2008) (holding that the modified categorical approach may be used whenever the state statute is "categorically overbroad").

III

These *Taylor*/*Shepard* principles are readily applicable here. The federal enhancing statute in this case defines as a generic qualifying offense one that constitutes a "crime of violence" such that it "has as an element the use, attempted use or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2(b)(1)(A)(ii) & cmt. n.1(B)(iii). And the Maryland statute for child abuse, under which Gomez was convicted, can be violated with both conduct that qualifies as a predicate conviction and conduct that does not so qualify.

In the prior version of the child abuse statute, Maryland defined child abuse in a manner that would categorically qualify as a violent felony. The statute punished any person "who maliciously beats, strikes or otherwise mistreats [a] minor child." *See* Acts of 1963, Ch. 43. By a 1973 amendment, how-

ever, the Maryland legislature broadened the statute to include not only the "malicious beating or striking" of a minor child but also child neglect, such as the failure to seek necessary medical care for a child or other forms of neglect that result in physical injury to the child. *See* Md. Code, Art. 27, § 35C;[3] *State v. Fabritz*, 348 A.2d 275, 280 (Md. 1975); *Pope v. State*, 396 A.2d 1054, 1060-62 (Md. 1979).

Because the Maryland statute under which Gomez was convicted is broader than the generic crime qualifying as a predicate offense (requiring the use of physical force), we may consult *Shepard*-approved documents to determine whether Gomez was *necessarily* convicted for the generic predicate offense of using physical force against the person of another.

In this case, when Gomez pleaded guilty to child abuse, she agreed that the operative facts for her conviction were that she burned her eight-year old child's feet with a candle, to punish the child, allowing the district court and us to conclude that Gomez *necessarily* was convicted for a crime of violence when she pled guilty under the Maryland child abuse statute with those admitted facts. *See Shepard*, 544 U.S. at 26 (approving use of the "colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant"). We can therefore be sure that Gomez's 1999 conviction "had an element of the use . . . of physical force" because she admitted to using violent physical force against her son. And because burning her son was the only form of

---

[3]The 1973 amendment to the offense of child abuse defined "abuse," in relevant part, as:

> The sustaining of physical injury by a child as a result of cruel or inhumane treatment or as a result of a malicious act by any parent of other person who has permanent or temporary care or custody or responsibility for supervision of a child, or by any household or family member, under circumstances that the child's health or welfare is harmed or threatened thereby.

Md. Code, Art. 27, § 35C(i).

abuse alleged in her case, we can also be sure that Gomez "necessarily admitted" to the use of violent physical force and, moreover, that the trial judge was "actually required to find" that fact in order to accept the guilty plea.

The Ninth Circuit has applied the modified categorical approach to virtually the same circumstances to determine that a child abuse conviction was a predicate violent offense for sentencing enhancement. *See United States v. Lopez-Patino*, 391 F.3d 1034 (per curiam) (9th Cir. 2004). In *Lopez-Patino*, the court considered whether the defendant's prior Arizona child-abuse conviction was a crime of violence under the illegal reentry Guidelines (as are applicable here). The court recognized that a violation of the Arizona law, which criminalized "caus[ing] a child or vulnerable adult to suffer physical injury or abuse," was not categorically a crime of violence "because a person could 'cause a child' physical injury without the use of force," 391 F.3d at 1037. Nonetheless, it then used the modified categorical approach and held that the sentencing enhancement was appropriate because the indictment there made it clear that the defendant had been convicted as a result of a violent act. *Id.* at 1038; *see also United States v. Tucker*, 641 F.3d 1110, 1124-25 (9th Cir. 2011) (holding that defendant's prior Nevada conviction for "willfully caus[ing] a child . . . to suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect" was a crime of violence under U.S.S.G. § 4B1.2 because charging documents showed basis for conviction as defendant's "volitional, violent conduct").

The Sixth Circuit likewise has used the modified categorical approach to determine that a Tennessee child abuse conviction was a predicate violent offense. *See United States v. Armstead*, 467 F.3d 943, 947–48 (6th Cir. 2006). In *Armstead*, the court held that the modified categorical approach could be applied because the statutory definition "embrace[d] both violent and non-violent crimes or [was] otherwise ambiguous," and therefore the statute "did not necessarily

require the use, attempted use, or threatened use of physical force" (quotation marks omitted).

We should likewise apply the modified categorical approach here to conclude that Gomez's prior conviction for child abuse "had an element of the use . . . of physical force."

IV

Although the preceding discussion makes clear that the modified categorical approach can easily be applied in Gomez's case, the majority rejects that analysis. According to the majority, the modified categorical approach may be used "for the sole purpose of determining which part *of the statute* the defendant violated." *Ante*, at 7 (emphasis added). This understanding of the modified categorical approach can be easily applied when a statute of conviction contains defined subsections, since the statutory text either will or will not contain the same elements as the generic offense. But with respect to so-called indivisible statutes, the majority insists that any judicial evaluation of the defendant's conduct is impermissible, regardless of how apparent it is from the *Shepard* documents that the defendant actually committed the predicate acts for the enhancement.

I believe the majority's conclusion rests on an overly cabined interpretation of *Taylor* and *Shepard* that undermines the entire purpose for using the modified categorical approach. Those cases make clear that courts contemplating sentencing enhancements can conduct a limited examination of the defendant's conduct *as it relates to his crime of conviction*, so long as factfinding and retrials are not involved. Statutory divisibility is simply irrelevant to the endeavor. As Chief Judge Easterbrook, writing for the dissent in *United States v. Woods*, 576 F.3d 400 (7th Cir. 2009), explained:

> What *Taylor* excludes is calling something "burglary" because that is what the defendant did, even

if he was convicted of something else (such as unlawful entry of a residence, after a plea bargain that excluded the "with intent to commit a felony therein" element). And *Shepard* blocks using anything other than the charging papers and plea colloquy to establish what the defendant was convicted of. Neither opinion makes "divisibility" indispensable to classification.

*Id.* at 413 (Easterbrook, C.J., dissenting).

Nor is the majority's divisibility rule compelled by the Supreme Court's more recent sentencing enhancement cases. To be sure, the Court has considered state statutes that have statutorily divided offenses into separate sections and, in connection with determining which section applies, has used the modified categorical approach. As the Court explained in *Nijhawan*:

The categorical method is not always easy to apply. That is because sometimes a separately numbered subsection of a criminal statute will refer to several different crimes, each described separately. And it can happen that some of these crimes involve violence while others do not. A single Massachusetts statute section entitled "Breaking and Entering at Night," for example, criminalizes breaking into a "building, ship, vessel or vehicle." Mass. Gen. Laws, Ch. 266, § 16 (West 2006). In such an instance, we have said a court must determine whether an offender's prior conviction was for the violent, rather than for the nonviolent, break-ins that this single five-word phrase describes (*e.g.*, breaking into a building rather than into a vessel), by examining "the indictment or information in jury instructions," *Taylor*, [495 U.S.] at 602, or, if a guilty plea is at issue, by examining the plea agreement, plea colloquy or "some comparable judicial record" of the factual

basis for the plea. *Shepard v. United States*, 544 U.S. 13, 26 (2005).

129 S. Ct. at 2299.

Because the Supreme Court has addressed such cases, where the state statute had subsections, the majority concludes that the Court therefore implied that the modified categorical approach can be used only when the state statutes explicitly divide conduct into separate crimes. *Ante*, at 7-8. The conclusion obviously does not follow. In *Johnson*, the case the majority claims resolved any confusion on this issue, the Court did consider a statute that was subdivided by sections. But nonetheless, it never suggested that the divisibility aspect was in any way important. Indeed, in response to the dissent's fear that the modified categorical approach might be at stake, it noted that the government can well use the modified categorical approach in cases where the state statutes were *not divisible*, such as Maryland's battery statute. The *Johnson* Court stated:

> [The dissent's view] exaggerates the practical effect of our decision. When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the "modified categorical approach" that we have approved, permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms. *Indeed, the government has in the past obtained convictions under the Armed Career Criminal Act in precisely this manner. See, e.g., United States v. Simms*, 441 F.3d 313, 316-17 (4th Cir.

> 2000) [considering Maryland's battery statute which
> is not divided].

130 S. Ct. at 2173 (emphasis added).

None of the Supreme Court cases cited by the majority used the words "divisible," "indivisible," or their analogues. In fact, the Supreme Court has *never* discussed divisibility in any of its sentencing enhancement cases, despite opportunities to do so. In *Taylor*, for example, the Supreme Court noted that at the time of Taylor's first conviction, Missouri had seven different burglary statutes, some with explicit subdivisions and some without. 495 U.S. at 578-79 & n.1. The Court did not indicate that this distinction between the statutes made any difference to its analysis. And although the dissenting opinion in the Third Circuit opinion in *Nijhawan* raised divisibility as an issue, *see Nijhawan v. Atty. Gen.*, 523 F.3d 387, 404-05 & n.18 (Stapleton, J., dissenting), the Supreme Court affirmed the majority opinion without addressing that argument.

V

Not only has the Supreme Court never required divisibility, our court has explicitly held many times that even where statutes do not divide themselves, they nonetheless may be considered under the modified categorical approach. The majority's new rule effectively overrules this long line of Fourth Circuit cases.

In *United States v. Kirksey*, 138 F.3d 120 (4th Cir. 1998), we considered an enhancement based on a conviction under Maryland's assault and battery statute, which punishes conduct that is both violent and nonviolent. We observed that "because Maryland recognizes common law crimes" and "no statute defines their elements," *id.* at 125, we could look to Maryland case law to determine the elements of an assault and battery offense. We found that Maryland's crime of bat-

tery "embraces a wide range of conduct, including 'kissing without consent, touching or tapping, jostling, and throwing water upon another.'" *Id.* (quoting *Epps v. State*, 632 A.2d 20, 23 (Md. App. 1993)). Because, however, at least some of the conduct criminalized by the Maryland statute could be based on the use of physical force, we applied the modified categorical approach to determine whether Kirksey's prior conviction qualified as a predicate conviction for the federal enhancement. *Id.* at 126.

*Kirksey*'s use of the modified categorical approach when evaluating a defendant's prior Maryland assault convictions has been applied consistently thereafter. *See, e.g.*, *United States v. Donnell*, 661 F.3d 890 (4th Cir. 2011); *United States v. Taylor*, 659 F.3d 339 (4th Cir. 2011); *United States v. Alston*, 611 F.3d 219, 222-23 (4th Cir. 2010); *United States v. Harcum*, 587 F.3d 219 (4th Cir. 2009); *United States v. Simms*, 441 F.3d 313, 316 (4th Cir. 2006); *United States v. Coleman*, 158 F.3d 199 (4th Cir. 1998) (en banc); *see also United States v. Spence*, 661 F.3d 194 (4th Cir. 2011) (applying the modified categorical approach to South Carolina's common law crime of assault and battery of a high and aggravated nature); *United States v. White*, 606 F.3d 144 (4th Cir. 2010) (applying the analysis of *Harcum* to Virginia's assault and battery statute).

The majority contends that although *Kirksey* and its progeny addressed an "indivisible" statute, those cases are distinguishable because the elements of Maryland's second-degree assault offense are defined by common law, not by statute. But the line between common law and statutory crimes is one the majority simply conjures from thin air. Neither the Supreme Court nor this court has previously recognized such a distinction when applying the modified categorical approach. *See Harcum*, 587 F.3d at 223 ("[W]hen the fact of conviction and *the statutory definition of the offense* are unduly vague or ambiguous, a sentencing court is entitled to turn to and apply the alternative 'modified categorical'

approach") (emphasis added). For example, in *United States v. Bethea*, 603 F.3d 254 (4th Cir. 2010), we applied the modified categorical approach to South Carolina's escape statute, which makes it a crime "for a person, lawfully confined in prison or upon the public works of a county or while in the custody of a superintendent, guard, or officer, to escape." S.C. Code Ann. § 24-I3-410(A). Given the breadth of the statutory language, we observed that "it is unclear whether South Carolina's escape statute proscribes one or more generic forms of conduct." 603 F.3d at 257. Nevertheless, "[b]ecause it is clear that the term 'to escape' broadly encompasses at least two generic classes of conduct under South Carolina law," we held that the district court had been correct to use the modified categorical approach in determining whether the defendant had committed a violent felony. *Id.* at 258.

Even circuits that have recognized the potential applicability of a divisibility requirement have not given effect to the distinction the majority invokes. Our sister courts have instead recognized that when a "state crime is defined by specific and identifiable common law elements, rather than by a specific statute, the common law definition of a crime serves as a *functional equivalent* of a statutory definition." *United States v. Walker*, 595 F.3d 441, 444 (2d Cir. 2010) (emphasis added) (quoting *United States v. Melton*, 344 F.3d 1021, 1026 (9th Cir. 2003)); *see also id.* ("While Walker correctly notes that [two of the Second Circuit's modified categorical approach cases], by their terms, apply to statutory offenses, neither opinion suggests that the analysis is different with respect to common law crimes, nor is there any reason in principle that it should be"). Given the "functional equivalency" of common law and statutory crimes, it makes no sense to authorize a sentencing court to interpret convictions under the former but not under the latter.

Tellingly, Gomez's briefs did not advocate the common law/statutory crime distinction the majority relies on today. Instead, she contends that to the extent *Kirksey* and its prog-

eny expanded the reach of the modified categorical approach, those decisions have been abrogated by the more recent opinions in *United States v. Vann*, 660 F.3d 771 (4th Cir 2011) (en banc) and *United States v. Rivers*, 595 F.3d 558 (4th Cir. 2010). Neither of these cases supports the majority's position on closer inspection.

Relying on *United States v. Chambers*, 129 S. Ct. 687 (2009), the panel in *Rivers* stated that the modified categorical approach is applicable "only when a statute prohibits different types of behavior such that it can be construed to enumerate separate crimes." *Rivers*, 595 F.3d at 563; *see also id.* at 564 ("[T]he modified categorical approach most naturally applies to statutes which proscribe different types of behavior constituting separate crimes"). The court therefore held that, for purposes of ACCA, the modified categorical approach could not be applied to South Carolina's blue light statute, which criminalized both intentional and unintentional violations of the statute. The majority argues this holding confirms the impropriety of applying the modified categorical approach to indivisible statutes. But even indivisible statutes can be "construed to enumerate separate crimes," as *Kirksey* shows. Moreover, although the South Carolina blue light law is not expressly divisible, it differs from other indivisible statutes in that it imposes strict liability. A jury would *never* be required to conclude that a defendant had acted intentionally (i.e., acted in the purposeful, violent manner required to fall within ACCA's residual clause) in order to convict under that statute. The holding in *Rivers* is therefore consistent with the methodology of *Taylor* as it was applied by the court below.

And while the various opinions in *Vann* addressed many issues, its implications for the present appeal are at best ambiguous. The statute at issue in that case contained two clear subdivisions, making it unnecessary for the court to decide how the modified categorical approach might apply to indivisible statutes. Moreover, although Judges King and Davis did conclude that the modified categorical approach

could not be applied in Vann's case, they rested this conclusion on the North Carolina courts' prior holdings that the statute covered only a single category of behavior. *See Vann*, 660 F.3d at 782 (King, J., concurring); *id.* at 794 (Davis, J., concurring). Only Judge Wilkinson's opinion appears to have contemplated the question presented in this case, and the understanding of the modified categorical approach he advocated is contrary to the rule the majority now adopts. *See id.* at 806 & n.4 (Wilkinson, J., concurring) ("[T]he modified categorical approach . . . applies in instances . . . where the statutory definition of the crime is broader than the generic definition").

In sum, we have consistently applied the modified categorical approach irrespective of a statute's facial divisibility. The majority's new rule thus flies in the face of these well-established precedents.

## VI

Gomez pleaded guilty to reentering the United States after having been removed following her conviction for the commission of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and 1326(b)(2). The simple crime of reentering after removal is punishable by a maximum of two years' imprisonment. 8 U.S.C. § 1326(a). But the crime of reentering after removal for the commission of an aggravated felony is punishable by a maximum of 20 years' imprisonment. *Id.* § 1326(b)(2). An enhancement for a prior conviction was obviously important to Congress.

It is not disputed that Gomez committed the later crime, punishable up to 20 years' imprisonment, as she pleaded guilty to it. Yet, the majority opinion now undermines the policy inherent in the statute by creating a new rule that precludes us from considering her prior child abuse conviction.

Creating such a new rule has no judicial purpose or policy purpose. In adopting the approach, the Supreme Court's con-

cern was only to restrict the kind of prior information that could be used so as to preserve the Sixth Amendment right of jury trial and the possibility of a court infringing on the fact-finding process without a jury. But until today's decision, no court has suggested that the jury trial right is compromised by the use of *Shepard*-approved documents under the modified categorical approach. Indeed, imposing a limited document class for use in the modified categorical approach was itself a restriction that the dissent in *Johnson* criticized as *too* restrictive. There is no statutory purpose that is served by making the modified categorical approach yet more restrictive.

If the majority's position is taken to its logical extreme, it becomes difficult to understand why the modified categorical approach should apply even to divisible statutes. If a state statute criminalized burglary involving "a house or boat," a sentencing judge could never be entirely sure that the jury found the structure the defendant entered was a house; presumably the jury could convict the defendant without divining the structure's true nature. Of course, the judge could dispel any uncertainty on this point by examining the *Shepard* documents. But if such an inquiry is appropriate, then in practical terms the difference between divisible and indivisible statutes is inconsequential. With the new rule, the majority now imposes more limitations that now frustrate Congress' purpose in providing for sentencing enhancements for those who previously committed crimes of violence.

Contrary to the majority's assertions to the contrary, *see ante*, at 10-11, applying the modified categorical approach regardless of divisibility also promotes the goal of sentencing uniformity. In *Taylor*, the Court reasoned that using a categorical approach was necessary to "protect[ ] offenders from the unfairness of having enhancement depend upon the label employed by the State of conviction." 495 U.S. at 589, 592. The Court expressed concern that if the meaning of "burglary" "depend[ed] on the definition adopted by the State of

conviction," then "a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct 'burglary.'" *Id.* at 590-91. Precisely this sort of sentencing disparity will be produced by the majority's holding. A defendant convicted of child abuse in Maryland will be categorically ineligible for the sentencing enhancement under § 2L1.2(b), while a defendant who was convicted of child abuse for exactly the same acts in nearby Washington, D.C., or West Virginia, where child "abuse" and child "neglect" are defined disjunctively, could be subject to that enhancement. *Cf.* W. Va. Code Ann. § 49-1-3 ("'Child abuse and neglect' or 'child abuse or neglect' means physical injury, mental or emotional injury, sexual abuse, sexual exploitation, sale or attempted sale or negligent treatment or maltreatment of a child by a parent, guardian or custodian"); D.C. Code Ann. § 16-2301 (defining child abuse as "infliction of physical or mental injury upon a child"; "sexual abuse or exploitation of a child; or "negligent treatment or maltreatment of a child"). The majority ensures that this court's sentencing enhancement jurisprudence will henceforth turn on the vagaries of state legislative drafting practices. *See United States v. Woods*, 576 F.3d 400, 413 (Easterbrook, C.J., dissenting) ("States did not write their statutes with *Begay* in mind").

I submit that so long as we conscientiously guard against the infringement of the defendant's Sixth Amendment rights with respect to the prior conviction, we should err, when considering prior convictions, on the side of evaluating all of the available *Shepard*-approved evidence in order to carry out Congress' intent as represented in the enhancement statutes. Our new rule, I believe, simply has this backwards.